54 F.3d 69
 67 Fair Empl.Prac.Cas. (BNA) 882, 63 USLW 2666,
Fed. Sec. L. Rep. P 98,704
 AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION; National
Council of the Churches of Christ in the U.S.A.; Unitarian
Universalist Association and Literary Society of Saint
Catherine of Sienna, Plaintiffs-Appellees,
v.
WAL-MART STORES, INC., Defendant-Appellant.
 No. 453, Docket 94-7362.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1995.
Decided April 20, 1995.
 
 Cornish F. Hitchcock, Washington, DC (Alan B. Morrison, Public Citizen Litigation Group, Washington, DC, Paul M. Neuhauser, Iowa City, IA, Hal S. Shaftel, Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City, of counsel), for plaintiffs-appellees.
 David H. Gikow, New York City (Lehman & Gikow, of counsel), for defendant-appellant.
 Before NEWMAN, Chief Judge, MINER and CABRANES, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendant-appellant Wal-Mart Stores, Inc. appeals from an order entered on March 14, 1994 in the United States District Court for the Southern District of New York (Wood, J.) awarding attorneys' fees to plaintiffs, a group of Wal-Mart shareholders. The fees were awarded for services rendered in the underlying action, in which the court granted summary judgment to plaintiffs enjoining Wal-Mart, in accordance with Rule 14a-8, 17 C.F.R. Sec. 240.14a-8, from omitting a certain shareholder proposal from its proxy materials. For the following reasons, we affirm the order of the district court.
 
 BACKGROUND
 
 2
 In the underlying action, plaintiff shareholders claimed that Wal-Mart violated Securities and Exchange Commission ("SEC") Rule 14a-8 by refusing to include in its proxy solicitation materials a certain shareholder proposal to be voted upon at Wal-Mart's annual meeting. As noted, the district court granted summary judgment for plaintiffs, and familiarity with that decision is assumed. See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 821 F.Supp. 877 (S.D.N.Y.1993) ("Wal-Mart I "). The pertinent facts are briefly summarized below.
 
 
 3
 Plaintiffs' proposal required Wal-Mart's directors to prepare and distribute reports about Wal-Mart's equal employment opportunity ("EEO") and affirmative action policies. The reports would include a description of the company's efforts to advise its suppliers of these policies as well as of its efforts to purchase goods and services from minority and female-owned suppliers. Plaintiffs initially sought to include this proposal in the proxy solicitation material for the June 1992 shareholders annual meeting. At that time, Wal-Mart informed plaintiffs that it would not include the proposal because Wal-Mart believed that it concerned a matter relating to the conduct of its ordinary business operations. Wal-Mart relied on SEC Rule 14a-8(c)(7), 17 C.F.R. Sec. 240.14a-8(c)(7), which exempts proposals relating to the conduct of ordinary business operations from inclusion in proxy materials. In accordance with Rule 14a-8(d), Wal-Mart notified the SEC that it had refused to include the proposal. It also requested the SEC to confirm its conclusion that the proposal was not required to be included in its proxy materials. On April 10, 1992, the SEC issued a no-action letter confirming Wal-Mart's position.
 
 
 4
 After receiving this no-action letter, Wal-Mart mailed its proxy statement without the proposed resolution, and the plaintiffs filed suit. In an amended complaint the plaintiffs alleged that they had resubmitted their proposal for inclusion in Wal-Mart's 1993 proxy materials, and that Wal-Mart again refused to include it. The district court found that the proposal, with some modifications, did not relate to the day-to-day business operations of the company but, rather, that it concerned significant policy issues for the company and thus could not be excluded. Wal-Mart I, 821 F.Supp. at 891-92. Wal-Mart did not appeal the district court's decision and included the proposal in its 1993 proxy materials. The proposal was defeated.
 
 
 5
 Plaintiffs subsequently moved in the district court for an award of attorneys' fees. The court found that, under the common-benefit rule, plaintiffs' action vindicated two substantial interests for all the shareholders of Wal-Mart. First, the proposal "facilitate[d] communication among shareholders and between shareholders and management on a limited range of subjects consistent with the content-based restrictions imposed by Rule 14a-8(c)." Second, the shareholders received "notice of the proposal and management's position on it prior to the meeting" and had "the opportunity to exercise their franchise in voting to approve or reject (or to abstain from voting on) the proposal." Because a substantial benefit was conferred on an "easily identifiable" group and the costs could be shifted to those benefitting, the district court awarded $54,140.00 in attorneys' fees to plaintiffs. This appeal followed.
 
 DISCUSSION
 
 6
 Generally, courts may not award attorneys' fees to a prevailing party absent statutory or contractual authority. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247-49, 95 S.Ct. 1612, 1616-18, 44 L.Ed.2d 141 (1975). However, courts have carved out certain exceptions to the general rule, one of which is the common-benefit rule. See, e.g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392, 90 S.Ct. 616, 625-26, 24 L.Ed.2d 593 (1970). The common-benefit rule permits a prevailing party to obtain reimbursement of attorneys' fees "in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class" and where it is possible to spread the costs proportionately among the members of the class. Id. at 393-94, 90 S.Ct. at 626. This exception is premised on the equitable principle that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The common-benefit rationale often is applied in suits by a group of shareholders against a corporation to vindicate some substantial right of all the shareholders of the company. Mills, 396 U.S. at 396, 90 S.Ct. at 627. Although the benefit need not be pecuniary, it "must be something more than technical in its consequence and be one that accomplishes a result which ... affect[s] the enjoyment or protection of an essential right to the stockholder's interest." Id. (internal quotations omitted).
 
 
 7
 In this case, there is no dispute that the class of persons benefitted is easily identifiable, that the benefits were conferred upon the class, and that the costs of the litigation could be shifted to those benefitting. See Boeing, 444 U.S. at 478-79, 100 S.Ct. at 749-50. The issue before us is whether the benefit conferred was so significant as to warrant the award of attorneys' fees and whether such an award was proper under the particular circumstances of this case. We address Wal-Mart's arguments in turn.
 
 
 8
 A. Substantial Benefit To Wal-Mart Shareholders
 
 
 9
 Wal-Mart claims that, because approximately ninety percent of the voting shares were voted against the proposal, the underlying decision failed to enhance the voting rights of the company's shareholders. We are unpersuaded. The percentage of shares voted against a proposal is insignificant because the right to cast an informed vote, in and of itself, is a substantial interest worthy of vindication.
 
 
 10
 In the labor context, the Supreme Court has recognized that an action by one union member that helped to preserve union democracy conferred a substantial benefit on all union members and upheld the award of attorneys' fees. See Hall v. Cole, 412 U.S. 1, 8-9, 93 S.Ct. 1943, 1947-48, 36 L.Ed.2d 702 (1973). Moreover, the Third Circuit has held that a substantial benefit was conferred on union members for the purpose of awarding fees, where the action "contributed to a fair process in bylaws referenda ... even though [the proponents'] proposals were defeated." Pawlak v. Greenawalt, 713 F.2d 972, 980 (3rd Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984).
 
 
 11
 The securities laws address similar concerns regarding corporate suffrage. Section 14(a) of the Securities Exchange Act of 1934 aims to protect shareholders by allowing the SEC to prescribe rules and regulations regarding proxy solicitation materials. See 15 U.S.C. Sec. 78n(a). This section "stemmed from the congressional belief that '[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange,' " J.I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (quoting H.R.Rep. No. 1383, 73rd Cong., 2d Sess. 13 (1934)), and litigation that enhances suffrage benefits all those eligible to vote. Accordingly, we hold that the promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue.
 
 
 12
 The district court identified the facilitation of communication among shareholders and between shareholders and management as a substantial interest that was vindicated by plaintiffs' action. We agree. In order to exercise the right of corporate suffrage, shareholders must be informed of important issues confronting the corporation. Section 14(a) of the Securities and Exchange Act provides the framework for ensuring that shareholders are properly informed about those issues. See Roosevelt v. E.I. Du Pont de Nemours & Co., 958 F.2d 416, 421-22 (D.C.Cir.1992). Here, plaintiffs sought to inform their fellow shareholders through Wal-Mart's proxy materials. Their attempts were thwarted until they vindicated their right to have their proposal included in the company's proxy materials. The result of this action was to facilitate communications among the shareholders as well as between shareholders and management. Management could not have been aware of the shareholders' views on this subject until the proposal was presented. Thus, the communication of a proposal relating to equal employment opportunity and affirmative action conferred a substantial benefit on the company's shareholders. The benefit is similar to the benefit resulting from a successful claim under Rule 14a-9, prohibiting omission of material facts from proxy statements, and fees are regularly allowed for successful 14a-9 lawsuits. See Mills, 396 U.S. at 396-97, 90 S.Ct. at 627-28.
 
 
 13
 B. Wal-Mart's Good-Faith Reliance on SEC No-Action Letters
 
 
 14
 Wal-Mart also contends that requiring it to pay plaintiffs' attorneys' fees is unfair under the circumstances of this case, particularly in light of its good-faith reliance on established SEC procedures and policy. Wal-Mart misapprehends the rationale behind awarding attorneys' fees based on the common-benefit rule. Under the common-benefit rule, "neither the presence nor absence of 'bad faith' is in any sense dispositive," because the purpose of the rule is to spread the cost of litigation evenly among those who have benefitted rather than to punish the losing party. Hall, 412 U.S. at 15, 93 S.Ct. at 1951. Here, the litigation has conferred a substantial benefit on the shareholders of Wal-Mart. Requiring Wal-Mart to reimburse plaintiffs' attorneys' fees simply spreads the costs of the litigation evenly to those benefitted, see Mills, 396 U.S. at 392, 90 S.Ct. at 625, and the company's good-faith reliance on SEC policies and procedures does not bar such an award.
 
 
 15
 Wal-Mart also contends that Congress provided a specific statutory exemption from liability for positions taken in good-faith reliance on SEC policies and procedures. See 15 U.S.C. Sec. 78w(a)(1). Section 78w(a)(1) provides, in pertinent part, as follows:
 
 
 16
 No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation, or order of the [SEC] ... notwithstanding that such rule, regulation or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason. (emphasis added).
 
 
 17
 First, we note that, as discussed above, the common-benefit rule is bottomed on principles of cost-allocation and does not impose the type of liability contemplated by the statute. Second, an SEC no-action letter does not constitute a "rule, regulation, or order" of the SEC; the letters merely provide informal advice of the SEC staff. See Amalgamated Clothing & Textile Workers Union v. SEC, 15 F.3d 254, 257 (2d Cir.1994). Accordingly, Wal-Mart's reliance on section 78w(a)(1) is misplaced.
 
 C. Wal-Mart's Remaining Claims
 
 18
 Wal-Mart claims that fees should not be assessed against it because the district court found that the proposal, as originally drafted by plaintiffs, properly was excluded. According to Wal-Mart, the proposal was required to be included only after it was altered by the district court. Although Wal-Mart mentioned the court's alteration of the proposal in its recitation of the facts to the district court, it never made this argument in that court.
 
 
 19
 Generally, "a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This general rule "may be overcome only when necessary to avoid manifest injustice," Schmidt v. Polish People's Republic, 742 F.2d 67, 70 (2d Cir.1984), or where there is "some extraordinary need ... to consider appellants' claim," Christensen v. Kiewit-Murdock Inv. Corp., 815 F.2d 206, 215 (2d Cir.), cert. denied, 484 U.S. 908, 108 S.Ct. 250, 98 L.Ed.2d 209 (1987). We find that because this issue was not raised in the district court and because Wal-Mart has not made a showing of manifest injustice or an extraordinary need for us to consider the matter on appeal, the issue is not properly before this court.
 
 
 20
 Finally, Wal-Mart claims that the award of attorneys' fees based on the common-benefit rule was improper because plaintiffs did not incur any attorneys' fees. This claim is premised on the fact that plaintiffs' attorneys provided their legal services free of charge in the first instance. During the fee proceedings in the district court, plaintiffs' attorneys submitted extensive evidence of the value of their services. Although the parties disputed whether the contingent nature of plaintiffs' attorneys' fees warranted an enhancement over the lodestar calculation, Wal-Mart failed to raise the present argument in the district court. Because no showing of manifest injustice or extraordinary need to consider this issue on appeal has been made, we decline to rule on this issue as well.
 
 CONCLUSION
 
 21
 For the foregoing reasons, the order of the district court is AFFIRMED.