106 F.3d 469
 65 USLW 2504, Fed. Sec. L. Rep. P 99,371
 Margaret GWOZDZINSKY, derivatively on Behalf of REVCO D.S.,
INC., Plaintiff-Appellant,
v.
MAGTEN ASSET MANAGEMENT CORP.; Talton R. Embry; Revco
D.S., Inc.; General Motors Hourly-Rate Employees Pension
Plan; General Motors Retirement Program for Salaried
Employees; L.A. Fire & Police Pension Systems--Fund 2525;
Western Union Pension Trust; The Bakal Company; The Core
Investment Limited Partnership; Levi Family Trust; Allen
H. Luray; Pearlstone 54 Trust; Ellen's U/W J.H.
Pearlstone; Jennifer Russell, Defendants-Appellees.
 No. 126, Docket 96-7233.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 5, 1996.
Decided Jan. 3, 1997.
 
 Paul D. Wexler, Bragger & Wexler, New York City, for Plaintiff-Appellant.
 Lee S. Richards, Richards Spears Kibbe & Orbe, New York City, for Defendants-Appellees.
 Before: FEINBERG, CARDAMONE, and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 Plaintiff appeals from an order of the United States District Court for the Southern District of New York (Sweet, J.), granting defendants' motion for summary judgment and dismissing plaintiff's complaint.
 
 BACKGROUND
 
 1
 Margaret Gwozdzinsky is a shareholder of Revco D.S., Inc. ("Revco"). Magten Asset Management Corp. ("Magten") is a New York corporation and a registered investment advisor. Talton Embry ("Embry") is Magten's sole officer and director and coChairman of Revco's Board of Directors. In March 1994, Magten, Magten's clients, and Embry collectively owned approximately 14.8% of Revco's outstanding common stock.
 
 
 2
 In June 1994, Revco issued a prospectus to its shareholders offering the right to buy additional shares of Revco common stock. Revco intended to use the proceeds of the sale to acquire another company, Hook-SupeRX, Inc. The prospectus offered each holder of common stock the right to purchase additional shares at a reduced rate. Each holder could purchase .305 new Revco shares for each share of stock already owned ("subscription privilege"). To ensure that all new shares would be purchased, the offering contained an "oversubscription privilege" guaranteeing that each holder who exercised all his or her rights under the subscription privilege could buy additional new shares, up to twice the number of shares purchased under the subscription privilege.
 
 
 3
 The price per share was $14. The market price of the stock, of course, was considerably higher, ranging from $16.75 per share on the last full day of trading before the rights offering was announced to $18.25 per share the day before the prospectus was printed.
 
 
 4
 In July 1994, Embry, Magten, and Magten's clients exercised their rights under the subscription privilege and the oversubscription privilege. Collectively, they purchased 2,380,128 shares under the basic subscription privilege and the oversubscription privilege. After exercising all of their rights under the offering, Magten's, Magten's clients' and Embry's collective ownership of Revco stock increased from 14.8% to 15%. Within six months of the purchase several Magten clients sold their new shares at a substantial profit. Neither Embry nor Magten itself sold their new Revco stock within six months of the purchase.
 
 
 5
 After Revco itself declined to bring suit, Gwozdzinsky sued Embry, Magten and several Magten clients on behalf of Revco in the United States District Court for the Southern District of New York (Sweet, J.) to recover "short-swing" profits earned from the purchase and sale of the new Revco stock. Because Magten, Magten's clients and Embry collectively own more than 10% of Revco's stock, they are subject to the restrictions of § 16(b) of the Securities Exchange Act of 1934 ("the Act"). Gwozdzinsky alleges that Revco is entitled to the profits earned by Magten's clients from the sale of the new Revco stock bought and sold within six months, because the transactions violated § 16(b) of the Act. Defendants moved for summary judgment. The district court granted the motion and dismissed Gwozdzinsky's complaint, finding that the transactions were exempt from § 16(b) by Rule 16a-9 of the Securities and Exchange Commission ("SEC").
 
 
 6
 Gwozdzinsky now appeals, arguing that (1) summary judgment was improper because the transactions did not fall within the SEC Rule 16a-9 exemption from § 16(b); and (2) even if summary judgment was proper, we should find SEC Rule 16a-9 void as an invalid exercise of the SEC's authority.
 
 DISCUSSION
 
 7
 Section 16(b) of the Securities Exchange Act of 1934 provides that:
 
 
 8
 For the purpose of preventing the unfair use of information which may have been obtained by ... [an] owner, director,or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale ... of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer.... This subsection shall not be construed to cover ... any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection. 15 U.S.C. § 78p(b).
 
 SEC Rule 16a-9 provides that:
 
 9
 The following shall be exempt from § 16 of the Act: ... (b) [t]he acquisition of rights, such as shareholder or pre-emptive rights, pursuant to a pro rata grant to all holders of the same class of equity securities registered under Section 12 of the Act.
 
 
 10
 The dispute centers around whether Revco's offering qualifies as a pro rata distribution under subsection (b) of Rule 16a-9. Although Rule 16a-9 was promulgated in 1991, there appear to be no cases interpreting the scope of the rule. The district court relied upon the plain language of the rule and Congress's intent in enacting § 16 of the Act, to conclude that Revco's offering fell within the exemption provided by 16a-9(b). We agree.
 
 
 11
 Rule 16a-9(b) specifically exempts "the acquisition of rights ... pursuant to a pro rata grant to all holders of the same class of ... securities." SEC Rule 16a-9(b). This language applies to any rights held by all shareholders in proportion to their percentage of stock ownership. Rule 16a-9 expressly cites preemptive rights as an example of the type of transaction exempted under the rule. Preemptive rights are the "right[s] of shareholders to acquire newly issued shares from the corporation ... pro rata to their existing holdings." Andrew L. Nichols, Shareholder Preemptive Rights, Boston B.J., Nov.-Dec.1995, at 4.
 
 
 12
 Gwozdzinsky argues that Revco's offering is not pro rata, as intended by Rule 16a-9(b), because the purchase of additional shares was not mandatory. This argument is unconvincing. A "right," by nature, is not an obligation. The holder is entitled to exercise that right, but is not required to do so. Preemptive rights allow shareholders to purchase enough stock to maintain their percentage of ownership, but do not obligate shareholders to buy the offered stock. With preemptive rights, as with the Revco offering, some people will exercise their right and others will not. Gwozdzinsky would have it that only offerings requiring shareholders to buy stock are exempt. Such "offerings" resurrect the memory of Tobias Hobson, the innkeeper who kept a stable of forty "choice" horses but made each customer take the horse standing nearest the stable door. Webster's New International Dictionary (3d ed. 1965).
 
 
 13
 Gwozdzinsky's interpretation of Rule 16a-9(b) conflicts with the congressional intent of § 16 of the Act. Section 16 prevents corporate insiders from using confidential information to profit from the purchase and sale (or sale and purchase) of the corporation's stock. See Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 591-92, 93 S.Ct. 1736, 1742-43, 36 L.Ed.2d 503 (1973); Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 422-23, 92 S.Ct. 596, 599-600, 30 L.Ed.2d 575 (1972); Shaw v. Dreyfus, 172 F.2d 140, 142 (2d Cir.1949). Section 16(b) was intended to "protect[ ] the public by preventing directors, officers, and principal stockholders of a corporation ... from speculating in the stock on the basis of information not available to others." S.Rep. No. 73-792, at 9 (1934).
 
 
 14
 Long before SEC Rule 16a-9, the Supreme Court recognized the overbreadth of § 16(b). "In deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent--the realization of short-swing profits based upon access to inside information." Kern County Land Co., 411 U.S. at 594, 93 S.Ct. at 1744. "Under the[ ] strict terms [of § 16(b) ], the prevailing view is to apply the statute only when its application would serve its goals." Id. at 595, 93 S.Ct. at 1745.
 
 
 15
 Before the promulgation of Rule 16a-9, we recognized that when all shareholders are given the right to buy additional stock pro rata, there is little fear of insiders using confidential information to benefit themselves at the expense of other shareholders. See Roberts v. Eaton, 212 F.2d 82, 85 (2d Cir.1954). "[L]ike treatment of all stockholders will in most cases remove the possibility of abuse." Roberts, 212 F.2d at 85.
 
 
 16
 In this case, Gwozdzinsky does not even allege that inside information was used. The reduced price of the stock was explicitly contained in the prospectus, as was a statement indicating Embry's, Magten's, and Magten's clients' intent to fully exercise their rights. Every stockholder had the same information and the same opportunity to purchase additional stock. In fact, Magten, Magten's clients' and Embry's overall percentage of stock ownership increased by only 0.2% after the offering, indicating that most stockholders (about 92%) also exercised their rights.
 
 
 17
 Gwozdzinsky argues alternatively that we should declare Rule 16a-9 void as an invalid exercise of the SEC's authority. We decline the invitation because Gwozdzinsky failed to raise this issue below.
 
 
 18
 "It is the general rule ... that a federal appellate court does not consider an issue not passed upon below ... [unless in] the discretion of the courts of appeals ... the proper resolution is beyond any doubt or ... injustice might otherwise result." Singleton v. Wulff, 428 U.S. 106, 120-21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (citations omitted). We have held that absent manifest injustice or a showing of extraordinary need, we will not decide an issue on appeal not first presented to the district court. See Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc., 54 F.3d 69, 73 (1995).
 
 
 19
 We find that because Gwozdzinsky failed to raise the issue of the validity of SEC Rule 16a-9 in the district court and has not made a showing of manifest injustice or extraordinary need for us to consider this matter on appeal, the issue is not properly before this court.
 
 CONCLUSION
 
 20
 The judgment of the district court is AFFIRMED.