SOLTEX POLYMER CORPORATION, Plaintiff–Appellant,

v.

FORTEX INDUSTRIES, INC. and Fortiflex, Inc., Defendants–Appellees.

No. 8, Docket 87–7245.

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1987.

Decided Nov. 3, 1987.

Carol F. Simkin, New York City (William M. Hart, Cowan, Liebowitz & Latman, New York City, and R.V. Lupo, Jack Q. Lever, Lupo, Lipman & Lever, Washington, D.C., of counsel), for plaintiff-appellant.

John N. Bain, Roseland, N.J. (Carl H. Rifino, Michael S. Miller, Carella, Byrne, Bain & Gilfillan, P.A., Roseland, N.J., of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

This case presents the interesting question of whether a finding of any likelihood of consumer confusion between two products bearing the same mark necessarily mandates the use of an absolute injunction in favor of the owner of that trademark. The instant appeal arises from an order of the United States District Court for the Eastern District of New York, McLaughlin, J., following a bench trial in which the court refused to issue an injunction in favor of plaintiff-appellant Soltex Polymer Corporation ("Soltex") against defendants-appellees Fortex Industries, Inc. ("Fortex") and Fortiflex, Inc. ("Fortiflex") barring the use of plaintiff's mark FORTI-FLEX on plastic containers. The district court instead directed defendants to use a disclaimer on a certain product line of containers after the court concluded, with respect to that product line, that the defendants had infringed upon plaintiff's mark. Because the district court did not abuse its discretion in fashioning an appropriate remedy given the limited nature of defendants' infringement as evidenced by the court's factual findings, we affirm.

## BACKGROUND

Soltex is a manufacturer of polypropylene and other raw plastic materials, and has its principal place of business in Houston, Texas. The company was formed in 1974 by its parent, Solvay & Cie, a Belgium corporation, to acquire a high-density polyethylene ("HDPE") business from Celanese Corporation ("Celanese"). Soltex also acquired the ownership rights to the registered trademark FORTIFLEX from its predecessor in interest, Celanese.

Soltex sells its raw plastic materials to other manufacturers who fabricate them into various finished plastic products such as containers for industrial uses and gallon milk jugs. Soltex's HDPE resin is in the form of a granular white powder and is sold under the trademark FORTIFLEX,

primarily in either 50 pound bags, 1,000 pound boxes or 180,000 pound railway hopper cars. The FORTIFLEX as well as the SOLTEX trademarks appear on all bags and boxes containing the resin and on all bills of lading accompanying rail car shipments. Both marks currently are displayed prominently in the company's advertising.

Since 1974, Soltex's sales of FORTIFLEX plastic have climbed from $66 million to $279 million in 1984, accounting for nearly 80% of its total business. FORTIFLEX plastic is one of the world's largest selling raw plastic products, and it is undisputed that this product has achieved a substantial amount of goodwill.

Fortex is a Puerto Rico corporation owned primarily by members of the Ballester family and is a manufacturer of finished rubber products, including various types of containers. During the late 1960s, Jose Ballester, now president of Fortex, was assigned the task of conducting a study of the plastics industry. Ballester's father, who was then the president of Fortex, wanted to start a new company which would manufacture containers made from a composite of rubber and plastic. With regard to this new product line, Fortex had to decide whether the products would carry the company's existing FORTEX trademark or whether a new mark should be selected. The Ballesters ultimately decided to adopt a mark that, while similar to FORTEX, would clearly establish a new identity and would emphasize their rubber/plastic products' qualities of strength and flexibility. Fortex also recognized the advantage of disassociating its new product line from existing FORTEX products in the event that the new product line proved unsuccessful. Consequently, the Ballesters chose "FORTIFLEX," a name which, like their FORTEX mark, uses the Latin root, "fort," for strength, yet suggests the product's flexible qualities.

Much to his chagrin, Jose Ballester later discovered that FORTIFLEX already was being used by Celanese for HDPE resin and by another company not connected with this litigation for rolling pins. He

apparently satisfied himself that the uses of the mark by those two companies were on non-competing goods. In addition, he asked an attorney for a legal opinion as to whether Fortex could register the FORTIFLEX mark. The attorney quickly discovered the trademarks held by the other two companies but agreed with Ballester that Fortex could adopt and use the mark since the prior registrations related to products that were substantially different from those contemplated by Fortex.

Fortiflex then was incorporated in 1975 and commenced operation in Puerto Rico. Over the past ten years, the company has sold finished plastic products, including industrial containers such as buckets and pails as well as commercial animal feeders, under the mark FORTIFLEX. Fortiflex's bucket and container line of products has been sold principally in Puerto Rico because these "straight-walled" products cannot be telescoped one inside the other and thus are expensive to ship. Since 1977, however, the company's "animal-feeder" line of products has been marketed successfully in the United States, and its sales in this country are approximately $1,000,-000 annually. As with Soltex's products, Fortiflex's products and related advertisements prominently display the FORTIFLEX mark as well as the company's name.

The district court heard testimony indicating that, as early as the fall of 1975, Soltex was aware of defendants' attempts to register the mark FORTIFLEX in Puerto Rico. Nothing was done, however, to prevent such registration. Soltex's management evidently concluded, at least initially, that Soltex's relatively low volume of business in Puerto Rico did not warrant an extensive effort to protect against the use of the mark by a small company. Several months thereafter during a routine marketing visit to the Fortiflex plant, an official of Soltex observed some plastic containers bearing the name FORTIFLEX and several bags of Soltex's FORTIFLEX HDPE resin. Soltex apparently confronted Ballester with its objection to defendants' use of the FORTIFLEX mark but also indi-

**1328**

cated that a solution could be "worked out."

Although, as the district court found, this conciliatory atmosphere continued over the next few years, the parties' discussions eventually were discontinued. Soltex thereupon brought an opposition proceeding before the United States Patent and Trademark Office. That proceeding was stayed when the present action was commenced. In its complaint, Soltex demanded, *inter alia,* injunctive relief against defendants for trademark infringement and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982).

In a comprehensive analysis of the factors enumerated by this court in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), Judge McLaughlin considered whether Soltex had demonstrated, as a result of defendants' use of the mark FORTIFLEX, that "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978) (per curiam), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Judge McLaughlin found that plaintiff's FORTIFLEX mark is suggestive of the nature of plaintiff's goods and has acquired, during the course of 30 years of continuous use, secondary meaning as a strong mark in the plastic resin industry; that the marks, while absolutely identical in terms of the word chosen, are used by both companies in conjunction with their respective corporate names and are presented as distinct logos; that with regard to defendants' animal-feeder line, there is "little or no" product proximity between defendants' animal-feeder containers and the end-product of plaintiff's resin, milk jugs and other similar containers, but that with regard to defendants' industrial container line, there is "modest" proximity in light of evidence presented at trial that industrial users of defendants' products are aware of the resin content of such products; that there was no evidence of actual consumer confusion of the two non-competing products; that there is "slim likelihood" that Soltex will ever "bridge the gap" and enter the finished plastics market; and that plaintiff concedes that defendants' products are of high quality. The district court also determined that defendants' use of the mark on its animal-feeder line did not result in a likelihood of confusion since the horse farmers who typically purchase these products are "akin to the casual" or relatively unsophisticated consumer and know little about Soltex's presence in the resin industry. On the other hand, the district court found that defendants' industrial container market does contain some comparatively sophisticated consumers who are familiar with Soltex's resin. Finally, the district court noted defendants' good faith in adopting a mark logically related to Fortex's "FORT" family of marks and in acting at all times relevant hereto without intent to infringe on plaintiff's mark.

Following its analysis of the various *Polaroid* factors, the district court concluded:

> [A]s to defendant's use of the FORTI-FLEX mark on its animal feeder and agricultural products line, there is little, if any, likelihood of consumer confusion. As to defendant's container line, however, the Court finds that the *Polaroid* factors cut minimally or moderately in favor of a holding that an appreciable number of ordinarily prudent purchasers may be confused as to the source of defendant's goods or defendant's association with the plaintiff.

After balancing the equities to determine the propriety of injunctive relief, the court denied Soltex injunctive relief with respect to defendants' animal-feeder and industrial container lines, but required defendants to use the following disclaimer in conjunction with the FORTIFLEX mark and logo on its industrial container line: "Not connected with Soltex Polymer Corporation of Houston, Texas."

## DISCUSSION

**I. The district court's *Polaroid* findings**

Soltex initially takes issue with the district court's *Polaroid* findings. These

findings will not be set aside on appeal unless they are clearly erroneous. *Plus Prods. v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1004 (2d Cir.1983). Soltex's objections relate principally to the district court's conclusions regarding the animal-feeder line. The record, however, amply supports the district court's finding that the farmers and others who purchase and actually use such products simply have little or no familiarity with manufacturers of plastic resin such as Soltex. The evidence further indicates that plaintiff's FORTI-FLEX resin and defendants' FORTIFLEX plastic animal feeders are sold in different markets, and thus there is minimal, if any, customer overlap or product proximity.

Soltex placed great emphasis in its brief and at oral argument on the likelihood that customers of its FORTIFLEX resin will mistake defendants' finished products for those of Soltex. Soltex has not entered, nor does it intend to enter, the finished plastics market. Indeed as the district court found, Soltex has a good business reason for not doing so: Soltex's customers, who manufacture finished plastic products, would resent the competition. The district court properly concluded, therefore, that there was "slim likelihood" of forward integration or "bridging the gap" on the part of Soltex. Consequently, Soltex has been unable to demonstrate that any of the district court's factual findings were clearly erroneous.

## II. Appropriateness of the relief granted

■ Soltex's principal argument on appeal is that the district court abused its discretion in refusing to issue an injunction against the use of appellant's mark on defendants' industrial container line of products upon finding a minimal or moderate likelihood of consumer confusion. As the district court recognized, the crucial issue in a trademark infringement action is whether there is substantial likelihood of consumer confusion with respect to the goods in question. *Mushroom Makers,* 580 F.2d at 47; *see* 15 U.S.C. § 1114(1)(a) (1982) ("likely to cause confusion" as to the source of origin). Soltex argues that once the district court determined that there

was any likelihood of confusion, it was entitled to injunctive relief as a matter of law in view of the Lanham Act's principal purpose to provide effective relief against infringement and thereby protect trademarks and the goodwill associated with them. *See* S.Rep. No. 1333, 79th Cong., 2d Sess., *reprinted in* 1946 U.S.Code Cong. Serv. 1274.

■ A basic principle of the law of equitable remedies, however, is that the relief granted should be no broader than necessary to cure the effects of the harm caused. *See Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971) (nature of violation determines scope of equitable remedy). Defendants maintain that this principle supports their contention that the district court did not abuse its discretion in ordering a disclaimer in lieu of an injunction.

A district court has a "wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct." *Springs Mills, Inc. v. Ultra-cashmere House, Ltd.,* 724 F.2d 352, 355 (2d Cir.1983) (citation omitted). We have emphasized before the "flexible approach" characteristic of our *Polaroid* decisions. *See Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 966 (2d Cir.1981) (citations omitted). Indeed, we have rejected expressly an "all-or-nothing" or per se rule mandating the use of an absolute injunction whenever likelihood of confusion is found. *Id.* at 967–68; *see Springs Mills,* 724 F.2d at 355 ("district court did not err in devising an appropriate limited injunction"). This flexible approach also is in accord with the function of a court of equity. *See Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944) ("[t]he essence of equity jurisdiction has been the power ... to mould each decree to the necessities of the particular case[;] [f]lexibility rather than rigidity has distinguished it").

■ The court's determination of whether to grant relief in the form of an absolute injunction or through the use of a disclaimer will not be disturbed on appeal,

therefore, unless there has been an abuse of discretion. *Springs Mills*, 724 F.2d at 355; *see Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 315–16 (2d Cir. 1982) (form of relief granted is within discretion of trial court). Although disclaimers may not always provide an effective remedy against an infringing use, *see Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1315 (2d Cir.1987); *Charles of the Ritz Group, Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1324 (2d Cir.1987), a careful review of the record in this case satisfies us that the district court did not abuse its discretion. Several factors convinced the district court that an absolute prohibition against defendants' use of the FORTI-FLEX mark was inappropriate. These included the court's factual findings that defendants adopted the FORTIFLEX mark in good faith, took substantial steps to present the mark only in conjunction with defendants' own stylized logo, and have a legitimate interest in preserving their rights in the "FORT" family of marks used by the Ballesters for many years. All of these findings are supported by the record.

In addition, given the undisputed fact that the market for defendants' industrial containers consists of relatively sophisticated buyers, the district court reasonably concluded that the minimal or moderate amount of potential confusion found could be cured effectively by use of a disclaimer. We find no abuse of discretion here, particularly in view of the district court's careful balancing of the equities to reach an *appropriate* result protective of the interests of both parties. *See McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1140 (2d Cir.1979) ("this Court has frequently supplemented its consideration of the *Polaroid* factors by balancing the conflicting interests of the parties involved") (citations omitted). Whether or not, as a matter of first impression, we would have reached the *same* result as the district court in refusing to enjoin defendants from using the FORTIFLEX mark on the industrial container line is beside the point. We simply cannot say that the district court abused its discretion in ordering a disclaimer instead of an absolute injunction. While we are aware that two other opinions filed today by panels of this court cast doubt on the effectiveness of disclaimers in trademark infringement cases involving a substantial likelihood of consumer confusion, *Home Box Office*, 832 F.2d at 1315; *Charles of the Ritz Group*, 832 F.2d at 1324, where, as here, the likelihood of consumer confusion is far less than substantial, we believe that it is within the district court's discretion to grant disclaimer relief.

## CONCLUSION

Soltex has failed to make the requisite showing that the district court's application of the *Polaroid* factors constituted reversible error. With regard to the animal-feeder line, the district court correctly declined to impose an injunction after finding little, if any, likelihood of consumer confusion. As to defendants' industrial container line, the district court's determination of minimal or moderate likelihood of consumer confusion is consistent with the court's *Polaroid* findings and militates in favor of a narrowly-drawn injunction. In this regard, the court did not err by ordering the use of a disclaimer. Accordingly, the judgment of the district court is

*Affirmed.*