739 So.2d 1203 (1999)
Elizier STERN, Appellant,
v.
STATE of Florida, Appellee.
No. 98-0768.
District Court of Appeal of Florida, Fourth District.
August 4, 1999.
Rehearing Denied September 24, 1999.
*1204 Mark Perlman of Mark Perlman, P.A., Hallandale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
CONNER, BURTON C., Associate Judge.
Elizier Stern appeals a final judgment adjudicating him guilty of selling counterfeit designer sunglasses. Stern contends the trial court erred in denying his motion for judgment of acquittal, in failing to exclude certain evidence as a sanction for the state's failure to comply with his discovery demand, and in refusing to give a requested jury instruction on a defense. We affirm the final judgment.
Stern was charged with a violation of section 831.05(1)(a), Florida Statutes (1995), for vending goods bearing counterfeit trademarks with a retail value of $1,000 or more. The charges resulted from Stern selling sunglasses bearing counterfeit Oakley, Armani, and Fendi trademarks.
At trial, the state called Eric Berger, a private investigator hired by the Oakley company, as a witness. Berger testified that he initiated an investigation of Stern after being informed by the trademark enforcement director of the Oakley company that Stern was selling counterfeit Oakley sunglasses in Key West. Berger located Stern and explained to him that the sunglasses he was selling bore a registered Oakley trademark, and thus, because his use of the trademark was not authorized, Stern could not sell the sunglasses. Berger served Stern with a cease and desist letter which stated that Stern agreed to refrain from selling sunglasses bearing the Oakley trademark in consideration of Oakley's promise to forego legal action against Stern for past sales of counterfeit Oakley sunglasses. Stern read and signed the cease and desist letter.
Berger further testified that two months later, acting on a tip, Berger located Stern conducting his counterfeit designer sunglass business at a swap shop in Fort Lauderdale. Berger's undercover investigator posed as a customer and purchased counterfeit sunglasses bearing the Oakley trademark from Stern. Berger then alerted local detectives. Berger, along with Charles Baker, an agent for the Fendi and Armani companies, accompanied local detectives to Stern's swap shop booth. Both Berger and Baker identified counterfeit sunglasses on display bearing trademarks of Oakley, Fendi, and Armani. Stern was arrested and charged with selling goods bearing counterfeit trademarks.
In addition to Berger, the state also called five other witnesses, all of whom corroborated Berger's testimony. However, none of the state's witnesses affirmatively testified that use of the trademarks was unauthorized by the owners of the trademarks. At the close of the state's case, Stern moved for a judgment of acquittal, arguing that the state failed to prove that the use of the trademarks was unauthorized by the owners of the trademarks. The trial court denied the motion.
During his defense, Stern testified on his own behalf and produced evidence that at his booth he displayed large signs, which made it clear to the public that he was selling look-a-like designer sunglasses. At the close of the case, Stern requested a jury instruction on the use of disclaimers as a defense to the charge. The state objected to the requested instruction on the grounds that the law does not support the use of disclaimers as a defense to the crime charged. The trial judge agreed with the state and denied giving the requested instruction. The jury subsequently *1205 found Stern guilty of vending goods with counterfeit trademarks.
In his first issue on appeal, Stern contends that a judgment of acquittal should have been granted because the state failed to produce sufficient evidence to prove that the use of the trademarks was unauthorized by the owner of the trademark. In moving for a judgment of acquittal, Stern admitted, for purposes of the motion, that all of the evidence produced by the state was factually true, and the trial court was required to draw every conclusion favorable to the state which is fairly and reasonably inferable from that evidence. See Spinkellink v. State, 313 So.2d 666, 670 (Fla.1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); Lynch v. State, 293 So.2d 44, 45 (Fla.1974); McConnehead v. State, 515 So.2d 1046, 1048 (Fla. 4th DCA 1987). Where the state presents competent evidence to support each element of the crime, a motion for judgment of acquittal is properly denied. See Boyce v. State, 638 So.2d 98, 99 (Fla. 4th DCA 1994); Anderson v. State, 504 So.2d 1270, 1271 (Fla. 1st DCA 1986).
Stern argues that the state failed to prove that the use of the trademarks was unauthorized because none of the state's witnesses affirmatively testified that the use of the various trademarks in question was unauthorized by the owner. However, the record shows that the state produced unrefuted testimony by various witnesses that the sunglasses sold by Stern had "counterfeit" trademarks, from which the jury could infer that use of the trademarks was unauthorized. Moreover, the state produced evidence from the trademark enforcement director employed by Oakley, as well as a private investigative agent of Oakley, that Stern was warned previously not to use the Oakley trademark and to cease and desist from selling the sunglasses bearing the counterfeit trademark. Stern ignored the warning, from which the jury could properly infer that his use of the trademark was unauthorized by the owner. There was also testimony from an investigative agent of Fendi and Armani that Stern was selling sunglasses with "counterfeit" Fendi and Armani trademarks, which local law enforcement was asked to investigate and prosecute. From that evidence, the jury could likewise properly infer that use of the Fendi and Armani trademarks by Stern was not authorized. Therefore, the evidence in this case supported the state's contention that use of all three trademarks was not authorized by the owners of the trademarks. The trial court properly denied the motion for a judgment of acquittal, and we affirm on this issue.
In his second issue on appeal, Stern contends that the Fendi and Armani trademarks should have been excluded from evidence as a sanction for the state's discovery violation, and, thus, the trial court abused its discretion by failing to exclude the trademark registration. In Richardson v. State, 246 So.2d 771, 775 (Fla.1971), the Florida Supreme Court held that the court must consider the following factors for imposition of discovery sanctions:
1) whether the discovery violation was inadvertent or willful,
2) whether the discovery violation was trivial or substantial, and
3) whether the violation prejudiced the ability of the opposing party to properly prepare for trial.
The trial court's decision regarding the exclusion of evidence as a sanction for discovery violations will not be disturbed on appeal, unless abuse of discretion has been shown. See State v. Tascarella, 580 So.2d 154, 155 (Fla.1991).
In this case, Stern objected to the introduction of two exhibits, which were authenticated copies of the Fendi and Armani trademark registrations. Each exhibit consisted of two pages, one of which contained a copy of the trademark registration with a depiction of the trademark and the other was the certificate regarding the authenticity of the copy of the trademark registration. Stern contended that *1206 the state failed to provide him with the certificates of authenticity until the day of trial and sought to exclude both exhibits from evidence as a sanction for the discovery violation. The trial court conducted the required Richardson inquiry and concluded the discovery violation by the state was not willful or prejudicial to the preparation of Stern's defense. The trial court also ruled that Stern's objection to the introduction of the exhibits was untimely. The record supports the trial court's finding that the substantive portion of the trademark registrations had been provided to Stern prior to trial. On appeal, Stern has failed to show an abuse of discretion by the trial court, and we affirm on this issue.
In his third issue on appeal, Stern contends that the trial court erred by failing to give a requested jury instruction on a defense. Stern was charged with violating section 831.05(1)(a), Florida Statutes (1995), which makes it a crime to sell goods bearing a forged or counterfeit trademark with a retail value of $1,000 or more. The underlying basis of any statute prohibiting trademark infringement is the avoidance of confusion in the marketplace. See Great Southern Bank v. First Southern Bank, 625 So.2d 463, 464 (Fla.1993). In the factual context of this case, the crime consists of two statutory elements, which are:
1) Goods were sold, offered for sale, or vended having a forged or counterfeit trademark, and
2) Goods had a retail value of $1,000 or more.
See § 831.05(1)(a), Fla. Stat. Case law adds a third element, which is that use of the trademark was likely to cause customer confusion in the market place. See Great Southern Bank, 625 So.2d at 469.
Regarding the third element of the crime, Stern contended at trial that conspicuously displaying large disclaimer signs at his booth stating that his sunglasses were look-a-likes was a defense to the crime, and he requested that the following instruction be given to the jury:
In the event that you find that the Defendant's use of forged or counterfeit trademarks in the marketplace is likely to cause customer confusion, you should still find the Defendant not guilty if you also find that the likelihood of customer confusion would be effectively cured by Defendant's use of disclaimers.
The trial court declined to give the requested instruction on the grounds that use of disclaimers could not be a defense in cases involving the sale of goods with counterfeit trademarks to the general public.
In defining the crime of trademark infringement, the Florida criminal statute is similar to the federal criminal statute.[1] However, unlike the federal criminal statute, section 831.05(2), Florida Statutes (1995) provides:
(2) All defenses, affirmative defenses, and limitations on remedies that would be applicable in an action under the Lanham Act, 15 U.S.C., ss. 1051 et. seq., or to an action under s. 495.131, shall be applicable in a prosecution under this section.
Id. Thus, in Florida, all relevant defenses that would be available in civil actions for trademark infringement are available as a defense to criminal prosecutions for trademark infringements.
Stern contends on appeal that the federal case of Soltex Polymer Corp. v. Fortex Industries, Inc., 832 F.2d 1325 (2d Cir.1987), creates a defense in a civil action which applies as a defense to the criminal charge in this case. In Soltex, the Second Circuit Court of Appeal held that a trial court could properly deny entry of an injunction to prohibit the use of a trademarked name where a disclaimer could cure potential confusion on the part of customers. See id. at 1329-30. Since Soltex recognized an instance in a civil proceeding where a disclaimer could successfully cure confusion about use of a trademark name, Stern contends categorically *1207 that disclaimers are a defense in a criminal prosecution for selling consumer goods in Florida with counterfeit trademarks. We disagree.
In Soltex, the trial court dealt with a situation where product names were the same, but the actual products marketed by two different companies were quite different.[2]See id. at 1326-27. More importantly, in Soltex the market for both products consisted of relatively sophisticated buyers, not the general public. See id. at 1328. Thus, in Soltex, the court found that a disclaimer could cure any confusion created by the use of the same trademark name on dissimilar products where the market consists of relatively sophisticated buyers. See id. at 1329-30. Soltex did not create a defense in a civil action which allows use of disclaimers to avoid trademark infringement claims for similar consumer products marketed to the general public, and thus, Stern's reliance on Soltex is misplaced in support of his argument that disclaimers are a defense to criminal trademark infringement involving consumer goods sold bearing counterfeit trademarks.
In this case, the type of product being sold by the owner of the registered trademark was the same type of product being sold by Stern, except that the registered trademark used on Stern's products was not authorized by the owner of the registered trademark. Both products were consumer goods being sold to the general public. Once the counterfeit sunglasses leave the booth, no disclaimer, no matter how prominently displayed at the booth, would give notice to the general public that the sunglasses were not the actual designer sunglasses. Thus, the signs Stern displayed at his booth could never cure the confusion in the general marketplace that both the civil statute and the criminal statute in Florida seek to avoid by prohibiting trademark infringement.
During the trial, the trial court properly instructed the jury in this case that before Stern could be found guilty, the state must prove that Stern's use of the forged or counterfeit trademarks in the marketplace was likely to cause customer confusion. The trial court further instructed the jury on the statutory factors approved by the Florida Supreme Court in Great Southern Bank in evaluating the likelihood that confusion exists. The trial court also properly instructed the jury that the "customer" to be considered in evaluating the likelihood of confusion not only included the potential direct purchasers of the counterfeit goods, but also potential purchasers of the trademark holder's goods and members of the public who encounter the counterfeit goods in a post-sale context. See U.S. v. Torkington, 812 F.2d 1347, 1350-53 (11th Cir. 1987) (provided that the confusion contemplated by criminal trademark counterfeiting statutes includes potential confusion by potential purchasers in the public who may not have the ability or opportunity to view disclaimers on display for only direct purchases). On the contrary, we find that the instruction requested by Stern could have misled the jury into thinking that the crime did not occur if the jury concluded the direct purchasers of the counterfeit sunglasses sold by Stern knew that Stern's sunglasses were look-a-likes. Therefore, the requested defense instruction was improper, and the trial court properly denied giving the requested instruction.
We affirm on all issues raised in this appeal.
WARNER, C.J., and STEVENSON, J., concur.
NOTES
[1] 15 U.S.C. § 1114(1).
[2] Soltex was marketing a granular white powder plastic resin sold in either 50 pound bags or 1000 pound boxes or 180,000 pound railway hopper cars under the name of "Fortiflex." See Soltex Polymer Corp., 832 F.2d at 1326-27. Fortex was marketing a line of finished containers and animal feeders made from a composite of rubber and plastic under the same name "Fortiflex." See id. at 1327.