974 So.2d 1047 (2007)
William H. KELLEY, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-1574.
Supreme Court of Florida.
October 25, 2007.
Rehearing Denied February 4, 2008.
*1048 Christine R. Davis, Sylvia H. Walbolt and James R. Wiley of Carlton Fields, P.A., Tallahassee, FL, and Kevin Jon Napper and Mac Richard McCoy of Carlton Fields, P.A., Tampa, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Carol M. Dittmar, Senior Assistant Attorney General, Tampa, FL, for Appellee.
David Loftis, New York, NY, on behalf of The Innocence Project, Inc., as Amicus Curiae.
PER CURIAM.
William H. Kelley appeals an order of the circuit court denying his motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We affirm the circuit court's denial of Kelley's motion for postconviction DNA testing.

FACTS AND PROCEDURAL HISTORY
William Kelley was indicted for the October 3, 1966, contract murder of Charles Von Maxcy, a wealthy citrus grower and rancher from Sebring, Florida. Kelley v. State, 486 So.2d 578, 579 (Fla.1986). John Sweet, a real estate broker with ties to Boston's criminal underworld, commissioned Kelley and Andrew Von Etter to carry out the murder. Kelley v. Secretary for Dep't of Corrections, 377 F.3d 1317, 1324 (11th Cir.2004). Originally, only Sweet was tried for the murder. After Sweet's first trial ended in a mistrial, the conviction resulting from his second trial was reversed on appeal. See Kelley v. Singletary, 222 F.Supp.2d 1357, 1358 (S.D.Fla.2002), rev'd sub nom. Kelley v. Secretary for Dep't of Corrections, 377 F.3d 1317 (11th Cir.2004); Sweet v. State, 235 So.2d 40 (Fla. 2d DCA 1970).
At that point, the case file, including the evidence involved, was transmitted to the clerk of the court for maintenance. Kelley, 486 So.2d at 579. The evidence remained there until April of 1976, nine and a half years after the murder, when the State, at the clerk's request, moved for an order requesting the court's permission to dispose of the evidence. The State's motion was granted and the evidence destroyed. Kelley, 377 F.3d at 1325.
The case was dormant until 1981 when Sweet approached law enforcement authorities seeking immunity regarding a separate criminal situation in return for his testimony pertaining to various crimes, including the Von Maxcy murder. Kelley, 486 So.2d at 579-80. It was Sweet's testimony upon which Kelley's indictment and prosecution were based.
Kelley's first trial ended in a mistrial. Upon retrial, he was found guilty of first-degree murder and sentenced to death. Id. Kelley's conviction and sentence were affirmed on direct appeal. Id. at 586. Denial of his first postconviction motion was also affirmed on appeal. Kelley v. State, 569 So.2d 754, 762 (Fla.1990). And, on March 12, 1992, this Court denied Kelley's petition for writ of habeas corpus. Kelley v. Dugger, 597 So.2d 262 (Fla.1992).
After an unsuccessful attempt to secure relief at the federal level, see Kelley, 377 F.3d at 1369, Kelley filed a motion for postconviction DNA testing of certain physical evidence pursuant to Florida Rule of Criminal Procedure 3.853. He listed twenty-nine items on which he sought *1049 DNA testing.[1] The motion also requested prehearing discovery to locate the items. In response, the State claimed that the items sought by Kelley were lost or destroyed. While Kelley acknowledged that some physical evidence was destroyed in 1976 pursuant to a court order, he maintained that the destroyed evidence was not the subject of his request for DNA testing. Kelley moved for a preliminary hearing to address these threshold issues, in particular his request for discovery. On April 19, 2006, the trial court entered an interim order setting a preliminary hearing for June 6, 2006.
The State moved to continue the June 6 hearing. At a May 10, 2006, telephonic hearing to address that request, the court sua sponte stated that the June 6 hearing would be a two-day final hearing, including the presentation of witnesses and evidence on the merits of Kelley's motion for postconviction DNA testing, specifically whether the DNA evidence still existed. Two days later, the trial court entered two orders. The first denied the State's motion for a continuance and cancelled the preliminary hearing. The second order set the case for a full evidentiary hearing on June 6-7, 2006.
In response, Kelley filed an emergency motion requesting that the court reconsider its discovery ruling and continue the final evidentiary hearing until after discovery on the existence of physical evidence could be completed. The trial court denied this motion during a May 26, 2006, telephonic hearing. This Court subsequently denied Kelley's petition to review the trial court's nonfinal order. Kelley v. State, 933 So.2d 521 (Fla.2006).
At the evidentiary hearing on June 6, 2006, ten witnesses testified. The first nine testified regarding their efforts to locate the evidence Kelley was seeking. These witnesses, after diligent searches, were unable to locate any of the requested items. First, Tina Barber, records custodian for the Highlands County Sheriff's Office, was unable to find any evidence in her office relating to Kelley's case. She found only a letter stating that older receipts were turned over to the attorneys in Bartow. Cecilia High, supervisor of property and evidence at the Highlands County Sheriff's Office, searched the property storage facility but could not find anything. Dr. Marta Coburn, chief medical examiner for Collier County, found nothing. Sheli Wilson, the District 10 medical examiner's office manager, and her staff searched but found nothing related to Von Maxcy's death. Suzanne Livingston, forensic services director for the Florida Department of Law Enforcement (FDLE), found four disposition forms in the case files indicating that the evidence had been returned to the submitting agency, the Highlands *1050 County Sheriff's Office, but found none of the requested evidence. Judy Bachman, Director of Criminal Court Services for the Highlands County Clerk of Courts, found evidence relating to Kelley's case, including a sealed envelope containing poster boards, photos, hotel receipts, and paper evidence introduced as exhibits in Kelley's first trial. She also found an order releasing some evidence in a related case, but she found none of the items requested. John King, special agent supervisor for the FDLE Sebring office, searched inventory and files but found nothing. Terry Wolfe, Tenth Judicial Circuit State Attorney investigator, searched both the Sebring and Bartow evidence lockers and found nothing. Sebring Assistant State Attorney Steve Houchin retrieved the boxes of case files for this case from the Sebring file room and delivered them to Wolfe to deliver to Assistant State Attorney Victoria Avalon, who represented the State in this proceeding. Houchin confirmed that there were no other files from this case in the file room. He noted that the state attorney does not keep items of evidence; items that are not admitted at trial are retained by the local investigating agency.
The final witness was Dr. Martin Tracey, professor of biological studies at Florida International University. He testified as Kelley's expert witness in the area of population genetics. Dr. Tracey discussed the ability of DNA testing to identify an individual to nearly a one hundred percent degree of certainty.
On June 29, 2006, following the evidentiary hearing, the trial court entered its order denying Kelley's motion for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. The trial court concluded that the evidence relating to Kelley's case no longer exists. Kelley appeals the trial court's denial of his motion.

ANALYSIS
Kelley raises three issues before this Court. First, Kelley claims that the trial court erred in denying his prehearing discovery request. Second, Kelley claims that he was denied due process due to inadequate notice of the evidentiary hearing. Third, he asserts that the trial court erred in finding that the DNA evidence no longer exists. We address each of these in turn.
A. Denial of Prehearing Discovery
The first issue is whether the trial court abused its discretion in denying Kelley's request for prehearing discovery. "On a motion which sets forth good reason, [a postconviction trial] court may allow limited discovery into matters which are relevant and material, and where the discovery is permitted the court may place limitations on the sources and scope." State v. Lewis, 656 So.2d 1248, 1250 (Fla. 1994) (quoting Davis v. State, 624 So.2d 282, 284 (Fla. 3d DCA 1993)). This standard has been applied to rule 3.853 motions for postconviction DNA testing. See Spaziano v. State, 879 So.2d 51, 54-55 (Fla. 5th DCA 2004).
Kelley claims to have "good reason" for postconviction discovery because the State never accounted for certain evidence "relevant and material" to his case. See Lewis, 656 So.2d at 1250. To determine whether these items still exist, Kelley claims it is necessary to depose prior custodians of this evidence. The trial court found that Kelley met his initial burden under rule 3.853(b) by identifying the evidence he wished to be tested and making the required allegations. However, following the evidentiary hearing, the court found that the State met its burden by presenting witnesses from all possible locations where the evidence might be stored. The trial *1051 court determined that there was no basis to conclude that the witnesses who testified could have conducted more thorough searches of the materials in the possession of their respective agencies and that Kelley's arguments were based on pure speculation and conjecture.
Indeed, given the evidence presented, it is clear that Kelley's motion is no more than a fishing expedition, which is impermissible under rule 3.853. See Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004); Cheshire v. State, 872 So.2d 427, 428-29 (Fla. 5th DCA 2004). As previously mentioned, evidence collected in the Sweet trials was destroyed by court order in 1976. Moreover, as testified to by the nine witnesses, none of the requested items were located despite a diligent search. Given these facts, the trial court did not abuse its discretion in denying Kelley further prehearing discovery.
B. Inadequate Notice of Final Evidentiary Hearing
Kelley next argues that he was denied due process because the trial court failed to grant him a continuance or otherwise provide adequate notice that the June 6, 2006, hearing would be the final evidentiary hearing on his rule 3.853 motion. This claim is procedurally barred and without merit.
This claim is procedurally barred because Kelley did not make a due process objection to the trial court. See Anderson v. State, 863 So.2d 169, 181 (Fla.2003); Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla.1987) ("In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court."). Although Kelley moved for an emergency hearing and requested a ninety-day continuance, he did not raise a due process objection.
Further, this claim is without merit. The granting or denying of a continuance is within the sound discretion of the trial court. See, e.g., Geralds v. State, 674 So.2d 96 (Fla.1996). A court's ruling will be sustained absent an abuse of discretionit will be sustained unless no reasonable person would take the view adopted by the trial court. Huff v. State, 569 So.2d 1247 (Fla.1990). In the present case, Kelley has failed to show that no reasonable person would take the position of the trial court in denying his motion to continue. Kelley had ample opportunity to conduct prehearing discovery in the six months between the filing of his rule 3.853 motion and the evidentiary hearing. Also, at the hearing, the State presented nine relevant witnesses, and Kelley had a more than sufficient opportunity to cross-examine them. Kelley failed to demonstrate that further discovery would have been fruitful. Clearly, the trial court provided Kelley with meaningful access to the judicial process. See Kokal v. State, 901 So.2d 766, 778 (Fla.2005) ("In a postconviction proceeding, all that due process requires is that the defendant be provided meaningful access to the judicial process."). We conclude that the trial court did not abuse its discretion based on the information that was available to it at the time.
C. The Trial Court's Finding that DNA Evidence No Longer Exists
Finally, Kelley claims that the trial court erred in finding that the DNA evidence he seeks no longer exists. We disagree. The trial court's finding was supported by competent, substantial evidence. See Stephens v. State, 748 So.2d 1028, 1031 (Fla.1999) (holding that the "competent substantial evidence" standard applies to the trial court's factual findings). First, as discussed above, it is undisputed that physical evidence in Sweet's case was destroyed *1052 by court order in April of 1976, nine and a half years after the murder. Kelley claims that the items he seeks were not included in the evidence that was destroyed but wholly fails to substantiate this assertion. Moreover, nine witnesses testified at the evidentiary hearing that despite diligent efforts to search evidence vaults at FDLE, the Highlands County Sheriff's Office, the Collier County medical examiner's office, the District 10 medical examiner's office, the Highlands County Clerk of Court's office, and the Tenth Judicial Circuit State Attorney's Office, no evidence could be found. We defer to the trial court's factual finding that the State met its burden of proving that the evidence Kelley seeks no longer exists.

CONCLUSION
For the foregoing reasons, we affirm the circuit court's order summarily denying Kelley's motion for postconviction DNA testing.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
QUINCE, J., recused.
NOTES
[1] Kelley sought to locate the following items and test them for DNA evidence: (1) the victim's body hair; (2) the victim's pubic hair; (3) the victim's head hair; (4) the victim's fingernail scrapings; (5) hair and scrapings from the wall of the victim's bedroom; (6) scrapings from a hole in the bedroom wall; (7) the victim's blood; (8) the brake pedal from the victim's car; (9) two hallway carpet runners; (10) a section of bedroom carpet; (11) the victim's hair comb; (12) the victim's handkerchief; (13) the victim's clothing; (14) scrapings from the outside left door of the victim's car; (15) a floor mat from the victim's car; (16) metal fragments removed from the victim's head; (17) the victim's shoes; (18) the victim's socks; (19) the victim's belt; (20) keys to the victim's car; (21) a metal door sill from the victim's car; (22) the left door window channel from the victim's car; (23) the victim's watch; (24) a seven-inch black handle knife from the victim's household; (25) an eleven-inch knife found in the yard of Mrs. Greg Maxcy; (26) a blue steering wheel from the victim's car; (27) a stainless steel pocket knife; (28) a sheet of paper containing handwritten inscription; and (29) a lead pencil.