GROSS, C.J.,
dissenting.
The majority has applied the wrong standard of review to this case, which involves the state’s disclosure of a witness on the first day of trial, before the jury was selected. The majority has incorrectly applied the concept of “prejudice” that is central to the analysis required by Richardson v. State, 246 So.2d 771 (Fla.1971). The majority fails to grasp the type of testimony the late disclosed witness was to give. The majority fails to appreciate the extent of the state’s disclosure of information, which the trial judge properly took into account in her Richardson ruling. For these reasons, I dissent.
The state first disclosed the name of Dr. Martin Tracey, a population geneticist, on the first day of trial prior to jury selection, Monday, December 11, 2006. The state called Tracey as a witness on Thursday. It was only then that the defense raised a Richardson objection to his testimony and moved for a continuance. The trial judge conducted a full Richardson hearing and her extensive ruling fills eight pages of the trial transcript. She overruled the objection and denied the motion for continuance.
As set forth by the supreme court in Brim v. State, 695 So.2d 268, 269 (Fla. 1997), the DNA testing process consists of two separate steps. The first step uses principles of molecular biology and chemistry to determine whether two DNA samples match or look the same. Id. “The second step relies on principles of statistics and population genetics to give statistical significance to the DNA match, by indicating the statistical frequency with which such matches might occur in the population.” Arnold v. State, 807 So.2d 136, 140 (Fla. 4th DCA 2002) (citing Brim, 695 So.2d at 269-70).
*641 Tracey’s testimony concerned the second step of the DNA testing process. Significantly, the information he conveyed to the jury was provided to the defense months before. Tracey explained that given the match between the defendant’s DNA profile and the profile obtained from the evidence (testified to by another witness), the chances were “one in 58 trillion” that someone else in the population other than the defendant had that same profile. This exact information is contained in Table 2 of the Bode lab reports that the state gave to defense counsel in January and July 2006. These reports contained the same charts that Tracey referenced and explained in his testimony. The crux of his testimony was thus disclosed over 9 months before trial.
“During a Richardson hearing, the trial court must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party’s trial preparation.” State v. Evans, 770 So.2d 1174, 1183 (Fla.2000). In the context of a Richardson violation, “the defense is procedurally prejudiced if there is a reasonable possibility that the defendant’s trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant.” State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995).
In this case, the trial court held a full Richardson hearing[5] and decided that the defense was not procedurally prejudiced by the disclosure of Tracey’s name on the first day of trial. When the trial court has held a Richardson hearing, its decision is subject to reversal only upon a showing that it abused its discretion. See Gethers v. State, 620 So.2d 201, 202 (Fla. 4th DCA 1993); Banda v. State, 536 So.2d 221, 223 (Fla.1988); Michaels v. State, 505 So.2d 694 (Fla. 4th DCA 1987); Whites v. State, 730 So.2d 762, 764 (Fla. 5th DCA 1999); Smith v. State, 499 So.2d 912 (Fla. 1st DCA 1986). “Discretion is abused only where no reasonable [person] would take the view adopted by the trial court.” Cox v. State, 819 So.2d 705, 713 (Fla.2002) (quoting Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000) (Huff v. State, 569 So.2d 1247, 1249 (Fla.1990))).
Procedural prejudice resulting from a Richardson violation demonstrates three characteristics not present in this case. First, the discovery violation injects facts into the case that have not been previously *642 disclosed. Second, the undisclosed information is case specific, not information generally available. Third, knowledge of the undisclosed information would have altered the way the defense prepared for trial.
For example, in Stem v. State, 739 So.2d 1203 (Fla. 4th DCA 1999), the defendant was charged with selling sunglasses bearing counterfeit designer trademarks. The state timely disclosed copies of Fendi and Armani trademark registrations, but failed to produce certificates of authenticity for the registrations until the day of trial. We found no abuse of discretion in the trial court’s finding that the discovery violation was not “prejudicial to the preparation” of the defense, noting that the “substantive portion of the trademark registrations had been provided” to the defense prior to trial. Id. at 1206. The certificates were not case specific; a standard form of this nature would accompany any valid trademark registration. Most importantly, there was no indication of how the defense would have prepared differently had the actual document, rather than its substance, been timely disclosed. See also Gethers v. State, 620 So.2d 201 (Fla. 4th DCA 1993) (affirming order finding no prejudice where defendant’s late disclosed statement “supported” the strategy of defense).
On the other hand, cases where courts have reversed a trial judge’s finding of no procedural prejudice involve the nondisclosure of case specific evidence which would have changed the defendant’s strategy or theory of defense at trial.
Thus, in McDowell v. State, 903 So.2d 290 (Fla. 4th DCA 2005), the charge of possession of an unauthorized short-barreled shotgun was based on the defendant’s constructive possession of a residence where the shotgun was found. The state failed to disclose the defendant’s statement to a police officer that he lived at that address. Aside from this undisclosed statement, there was no evidence that the defendant lived at the residence. We reversed the trial judge’s finding of no procedural prejudice, observing that had defense counsel been aware of the defendant’s statement, he was “unlikely to have pursued the adopted strategy that the ‘defendant didn’t live in the apartment where they found the shotgun.’ ” Id. at 292.
Similarly, in Hatcher v. State, 568 So.2d 472 (Fla. 1st DCA 1990), the defendant was charged with leaving the scene of an accident. Initially, the state contended that the defendant had to have been aware of the accident merely “by virtue of how it occurred.” Id. at 474. Undisclosed witnesses testified at trial that they expressly told the defendant that he had caused an accident. The first district held that procedural prejudice to the defense was “inherent” where the state changed its “theory of the case after the defendant has testified.” Id. at 475.
The fifth district found procedural prejudice in a case where the defense did not learn of the existence of DNA evidence until the middle of trial. In Rojas v. State, 904 So.2d 598 (Fla. 5th DCA 2005), the defendant was charged with attempted robbery. His defense was to attack the eyewitness identification. Over objection, the state introduced an undisclosed DNA lab report indicating that DNA taken from hairs located on a mask found near the crime scene matched the defendant’s DNA. The fifth district reversed for a new trial, concluding that the defendant’s trial preparation or strategy would have been materially different had it known of the DNA evidence.
Here, the trial judge’s determination that the defense had not been procedurally prejudiced was entirely reasonable, so there was no abuse of discretion. None of the hallmarks of procedural prejudice were *643 present. Tracey’s testimony did not inject new facts into the case; they had been disclosed for months. The statistical information was not case specific, but was generally applicable in all DNA cases. The defense never said how it would have changed its strategy or theory of defense had Tracey’s name been timely disclosed, instead of just the substance of his testimony.
The defense was aware of the substance of the testimony by July 2006 from the reports disclosed by the state. The statistical aspect of the DNA evidence had been available to the defense for months. Also, as the trial judge noted, Tracey was the only DNA statistical expert that the Bro-ward state attorney’s office had ever used. He had testified in as many as 150 trials in Broward County and the public defender’s office had participated in a majority of them.[6] In another context, the supreme court has written that “a public defender’s office is the functional equivalent of a law firm.” Bowie v. State, 559 So.2d 1113, 1115 (Fla.1990). In the months before trial, lawyers in the same law firm can be expected to talk, so the defense lawyer had both the knowledge and the resources to anticipate and prepare for Tracey’s testimony.
Tracey’s testimony was not case specific. It was a necessary link in any DNA case that established the statistical probability that a particular sample of DNA would match anyone in the population other than the defendant. This testimony would be virtually the same in any case for any defendant whose DNA profile matched the evidence. Tracey’s testimony generally explained how these statistics are generated. For this, he referenced an FBI population database that is commonly used and publicly available on the internet. Although the defense had the necessary information to prepare for this aspect of the case, it did not do so.
By the time jury selection began on Monday, the trial judge had granted eleven continuances, nine of which were charged to the defense. Defense counsel did not move for a continuance on Richardson grounds on Monday, before the jury was sworn. She waited until Thursday, when every witness but Tracey had testified. She made no attempt to speak with Tracey or depose him on Monday, Tuesday, or Wednesday, when he would have been available.
Most significantly, the defense has never identified what it might have done differently had Tracey’s name been disclosed, instead of just the lab report. The initial brief states that the defendant “did not have the opportunity to ... develop impeachment and rebuttal testimony,” but does not say what the testimony is or how it could be accomplished. The brief was filed over two years after trial, which is certainly enough time to figure out what the “impeachment and rebuttal” testimony would be so that it could be specifically described. At trial, the defense attorney could not say what she would have done differently, even though she had known the substance of the testimony for months. Even her motion for new trial talks in generalities and not specifics.
It was thus well within the trial judge’s discretion to conclude that there was no *644 procedural prejudice, that the defense would have done nothing differently had Tracey’s name been disclosed when the charges were filed. The defense had always faced “one in 58 trillion” odds with the DNA testimony and did nothing to try and change the equation. Rather, the defense chose to cast a hollow objection into the legal waters in the hope that a judge would bite. You never know.

. Most cases that reverse for discovery violations do so because the trial judge has not conducted a full Richardson hearing, usually because the court erroneously found that no discovery violation had occurred. There is a difference between a procedural prejudice analysis in the context of a full Richardson hearing and deciding whether a discovery violation amounted to harmless error where there has not been a full Richardson hearing that considered the issue of procedural prejudice. As the supreme court wrote in Scipio v. State, 928 So.2d 1138, 1149 (Fla.2006):
An analysis of procedural prejudice does not ask how the undisclosed piece of evidence affected the case as it was actually presented to the jury. Rather, it considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation. By contrast, an analysis of substantive prejudice would ask whether it was possible that the error affected the jury’s verdict. While this standard itself is a high one for the State to overcome, it is of an entirely different quality than a procedural prejudice analysis.
Id. (citations omitted). These "deficient” Richardson hearing cases engage in a harmless error analysis — can it be said “beyond a reasonable doubt that the defendant was not procedurally prejudiced by the [discovery] violation.” Evans, 770 So.2d at 1183.

. Dr. Tracey is a commonly used expert and his name frequently appears as an expert used in Florida cases. See, e.g., Owen v. State, 986 So.2d 534, 549 (Fla.2008); Kelley v. State, 974 So.2d 1047, 1050 (Fla.2007); Douglas v. State, 878 So.2d 1246, 1252 n. 4 (Fla.2004); Armstrong v. State, 862 So.2d 705, 712 (Fla. 2003); Yisrael v. State, 827 So.2d 1113, 1114 (Fla. 4th DCA 2002); Arnold v. State, 807 So.2d 136, 139 (Fla. 4th DCA 2002); Johnson v. State, 717 So.2d 1057, 1061 (Fla. 1st DCA 1998).