08-4487-cv(L)
Patsy's Italian Restaurant, Inc. v. Banas

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: October 19, 2009          Decided: August 24, 2011)

Docket Nos. 08-4487-cv(L), 08-4774-cv(XAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PATSY'S ITALIAN RESTAURANT, INC.,
      Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,

PATSY'S BRAND, INC.,
      Plaintiff-Appellant-Cross-Appellee,

        v.

ANTHONY BANAS, doing business as Patsy's, doing business as
Patsy's Pizzeria Trattoria Impazzire, doing business as Patsy's
Bakery & Café, ALLAN ZYLLER, doing business as Patsy's Pizzeria
Trattoria, doing business as Patsy's, AL & ANTHONY'S PATSY'S,
INC., I.O.B. REALTY, INC.,
      Defendants-Counter-Claimants-Appellees-Cross-
      Appellants,

PATSY'S BAKERY & CAFÉ, PATSY'S PIZZERIA,
      Defendants-Appellees,

ANTHONY & PATSY'S,
      Defendant-Appellee-Cross-Appellant,

BSZ REALTY CORP.,
      Defendant,

PATSY'S INC.,
      Intervenor-Cross-Appellant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
B e f o r e:   WINTER, POOLER, Circuit Judges, and RAKOFF,
              District Judge.[*]

---

[*] The Hon. Jed S. Rakoff, of the United States District
Court for the Southern District of New York, sitting by
designation.

1

Patsy's Italian Restaurant appeals, and Patsy's Pizzeria cross-appeals, from a judgment of the United States District Court for the Eastern District of New York (Ramon E. Reyes, Jr., Magistrate Judge) after a jury trial on claims brought pursuant to trademark and unfair competition law. We uphold the district court's jury instructions. Additionally, we affirm the district court's refusal to grant a new trial on the issue of whether Patsy's Pizzeria made fraudulent statements to the Patent and Trademark Office, as well as its refusal to vacate the jury's verdict that Patsy's Italian Restaurant did not fraudulently obtain its trademark registrations. We further affirm the district court's refusal to reinstate Patsy's Pizzeria's trademark registration and its cancellation of Patsy's Italian Restaurant's trademark registrations. Finally, we uphold the district court's denial of attorneys' fees and injunctive relief. We therefore affirm.

NORMAN H. ZIVIN, Cooper & Dunham LLP, New York, New York (Robert T. Maldonado, Tonia A. Sayour, on the brief), for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee and Plaintiff-Appellant-Cross-Appellee.

PAUL GRANDINETTI, Levy & Grandinetti, Washington, D.C. (Rebecca J. Stempien, Steven M. Levy, on the brief), for Defendants-Counter-Claimants-Appellees-Cross-Appellants.

2

TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 5

a) The Parties . . . . . . . . . . . . . . . . . . . . . . 5

b) The Prior Sauce Dispute . . . . . . . . . . . . . . . . 8

c) The Current Dispute . . . . . . . . . . . . . . . . . . 10

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . 14

a) Patsy's Italian Restaurant's Appeal: Merits . . . . . . . 14

        1) Cancellation of Appellants' Registrations . . . 14

                A) Cancellation Not Barred by the
                Prior Injunction . . . . . . . . . . . . . 15

                B) Patsy's Pizzeria Only Partially
                Abandoned Its Marks . . . . . . . . . . . 17

                C) Jury Instructions Pursuant to
                Grants of Judgment as a Matter of
                Law . . . . . . . . . . . . . . . . . . . 24

        2) Denial of Attorneys' Fees . . . . . . . . . . . 28

b) Patsy's Pizzeria's Cross-Appeal: Merits . . . . . . . . 29

        1) Limitation of Appellees' Rights to
        Pizzeria Services . . . . . . . . . . . . . . . . 29

        2) Fraud on the PTO . . . . . . . . . . . . . . . 33

        3) Refusal to Reinstate Registration No. 2,213,574   36

c) Injunctive Relief . . . . . . . . . . . . . . . . . . . 37

        1) Refusal to Enjoin Appellees from Using
        Patsy's Outside of Manhattan. . . . . . . . . . . 38

        2) Prohibiting Appellants and Patsy's Pizzeria
        From Using Solely "PATSY'S" . . . . . . . . . . . 41

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 46

WINTER, Circuit Judge:

This appeal is the latest, longest, and perhaps even the last, chapter in a long legal struggle involving a host of trademark and unfair competition claims over the name "Patsy's." Patsy's Italian Restaurant, Inc., and Patsy's Brand, Inc. (collectively "Patsy's Italian Restaurant" or "appellants") appeal from a judgment entered after a jury trial before Magistrate Judge Reyes. Anthony Banas, Anthony's & Patsy's Inc., Allan Zyller, Al & Anthony's Patsy's Inc., I.O.B. Realty, Inc., and Patsy's Inc. (collectively "Patsy's Pizzeria" or "appellees") cross-appeal.

Patsy's Italian Restaurant's appeal raises the following issues: (i) whether the district court erroneously cancelled their service mark registrations; (ii) whether the district court's decisions regarding injunctive relief constituted an abuse of discretion; and (iii) whether the district court abused its discretion when it denied their request for attorneys' fees. Patsy's Pizzeria's cross-appeal raises the following issues: (i) whether their rights were erroneously limited to pizzeria services; (ii) whether the jury verdict that they fraudulently obtained their service mark registration can be upheld; (iii) whether the jury verdict that appellants did not fraudulently obtain their service mark registrations should have been vacated; (iv) whether the district court erroneously refused to reinstate their service mark registration; and (v) whether the district

4

court's decisions regarding injunctive relief constituted an abuse of discretion.

We affirm. Relevant factual disputes were resolved by the jury, and the district court's equitable relief was appropriately balanced and designed to limit ongoing consumer confusion.

BACKGROUND

To shorten this section and overall opinion, we provide only an overview of the parties, their trademarks, their relationship with one another, and the current dispute. Relevant descriptions of the evidence at trial, the jury instructions, and various aspects of the motion practice in the district court will be given in the DISCUSSION section when relevant.

a) The Parties

Appellants are associated with Patsy's Italian Restaurant on West 56th Street in Midtown, New York City. It has been in operation since 1944 and is well-known for Italian cuisine. The entity Patsy's Italian Restaurant, Inc. operates the restaurant. Patsy's Brand, Inc. was created in 1993 to sell packaged food products in association with Patsy's Italian Restaurant. At the beginning of this action, Patsy's Italian Restaurant, Inc. held two federal service mark[1] registrations issued November 1, 2005

---

[1] A service mark is:
> [A]ny word, name, symbol, or device, or any combination thereof--
>> (1) used by a person, or
>> (2) which a person has a bona fide intention to use in commerce and applies to register on

5

-- Registration Nos. 3,009,836 (the "´836 Registration") and 3,009,866 (the "´866 Registration") -- which have since been transferred to Patsy's Brand. The ´836 Registration is for the stylized mark PATSY'S PR for restaurant services. The ´866 Registration is for the mark PATSY'S for restaurant services not including pizza. Patsy's Brand also holds Registration No. 1,874,789 (the "´789 Registration") for the trademark PATSY'S for sauces.

Appellees are associated with Patsy's Pizzeria. The original Patsy's Pizzeria opened in 1933 in East Harlem and claims to have been the first pizzeria to sell pizza by the

---

> the principal register established by this
> chapter,
> to identify and distinguish the services of one
> person, including a unique service, from the
> services of others and to indicate the source of
> the services, even if that source is unknown.
> . . .
> 15 U.S.C. § 1127. In contrast, a trademark is:
> [A]ny word, name, symbol, or device, or any
> combination thereof--
> (1) used by a person, or
> (2) which a person has a bona fide intention
> to use in commerce and applies to register on
> the principal register established by this
> chapter,
> to identify and distinguish his or her goods,
> including a unique product, from those
> manufactured or sold by others and to indicate the
> source of the goods, even if that source is
> unknown.
> Id. Because trademarks and service marks are generally
> protected by the same standards, see 15 U.S.C. § 1053; Lane
> Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d
> 337, 344 n.2 (2d Cir. 1999), we make no distinction in the
> law governing these marks unless specifically noted.

slice.  I.O.B. Realty, Inc. purchased the original Patsy's Pizzeria in 1991 and entered into a licensing agreement with Patsy's Inc. in 1998.  Under the current agreement, I.O.B. Realty owns the real estate and trademarks, whereas Patsy's Inc. is the franchising arm of Patsy's Pizzeria.  There are currently six Patsy's Pizzeria locations in Manhattan in addition to the original location, the Staten Island location, and the Syosset location.  When appropriate, we refer to I.O.B. Realty and Patsy's Inc. collectively as the "intervening appellees."  I.O.B. Realty previously received two federal service mark registrations -- Registration No. 1,975,110 ("the "´110 Registration") and Registration No. 2,213,574 (the "´574 Registration").  The ´110 Registration, issued May 21, 1996, was for the mark PATSY'S for restaurant services.  The ´574 Registration, issued December 29, 1998, was for the mark PATSY'S PIZZERIA for restaurant services.

Appellees Banas and Anthony & Patsy's, Inc. are associated with the Staten Island location of Patsy's Pizzeria, and, when appropriate, are referred to collectively as the "Staten Island appellees."  The district court found that, as a matter of law, the Staten Island location was opened after they obtained a license to use I.O.B. Realty's marks.  Appellees Banas, Zyller, and Al & Anthony's Patsy's, Inc. are associated with the Syosset location of Patsy's Pizzeria, and, when necessary, are referred to as the "Syosset appellees."  The district court found that, as a matter of law, the Syosset location also obtained a license to

7

use I.O.B. Realty's marks.

b) <u>The Prior Sauce Dispute</u>

The parties coexisted without litigation until each began to sell packaged sauce under the name "Patsy's," thereby causing considerable consumer confusion.  On October 8, 1998, the intervening appellees brought a cancellation proceeding before the Patent and Trademark Office (the "PTO") seeking the cancellation of Patsy's Brand's ´789 Registration for PATSY'S for sauces.  Patsy's Brand responded by filing a cancellation proceeding before the PTO seeking the cancellation of I.O.B. Realty's Registration No. 1,975,110 for PATSY'S for restaurant services and Registration No. 2,213,574 for PATSY'S PIZZERIA for restaurant services.  Patsy's Brand also filed suit in the Southern District against the intervening appellees.  The action (the "sauce litigation") alleged trademark infringement and unfair competition due to appellees' sale of sauces using the PATSY'S mark.  The cancellation proceedings were consolidated and suspended pending resolution of the sauce litigation.

In granting Patsy's Brand's a preliminary injunction in the sauce litigation, the district court rejected the intervening appellees' argument that they were entitled to bridge the gap into sauces as the senior user of the PATSY'S mark for restaurant services.  <u>Patsy's Brand Inc. v. I.O.B. Realty Inc.("Patsy's Brand I")</u>, 53 U.S.P.Q.2d 1861, 1862-63 (S.D.N.Y. 2000).  The court reasoned that the mark PATSY'S for restaurant services was

8

weak, as both parties had the right to use the mark for restaurant services. Id. at 1863. It also observed that it was unclear when the intervening appellees entered the sauce market, because evidence provided in support of the alleged date of entry was clearly falsified, a fact that suggested that the intervening appellees "did not choose [their] sauce label in good faith." Id. at 1862. In a later opinion granting Patsy's Brand's motion for summary judgment in the sauce litigation, the district court again reiterated its findings that the intervening appellees presented falsified evidence and ordered them to show cause why they should not be sanctioned for doing so. Patsy's Brand Inc. v. I.O.B. Realty Inc. ("Patsy's Brand II"), 58 U.S.P.Q.2d 1048, 1050, 1059 (S.D.N.Y. 2001). The district court sanctioned the intervening appellees and enjoined them from petitioning to cancel Patsy's Brand's registrations for sauces, other packaged food products, and restaurant services. In addition, it directed the Commissioner of the PTO to cancel the intervening appellees' ´110 Registration.

On October 18, 2001, Patsy's Brand filed a motion with the PTO requesting that the cancellation proceedings be reinstated. This request led to the subsequent judgment cancelling the intervening appellees' ´110 Registration on September 4, 2002. However, after Patsy's Brand filed its request, the intervening appellees filed a notice of appeal in the sauce litigation. Notably, this appeal did not challenge the portion of the

9

injunction that enjoined them from petitioning to cancel Patsy's Brand's registrations for restaurant services.  Patsy's Brand, Inc. v. I.O.B. Realty, Inc. ("Patsy's Brand III"), 317 F.3d 209, 219-21 (2d Cir. 2003).  On January 16, 2003, we affirmed the sanctions against the intervening appellees, struck the provision cancelling the intervening appellees' ´110 Registration, and stated "that the injunction should be confined to the marketing of pasta sauce and food products and should not reach the [intervening appellees'] restaurant business . . . ."  Id. at 221-22.

On May 27, 2003, the Commissioner erroneously cancelled the intervening appellees' ´110 Registration and ´574 Registration. On July 13, 2007, after realizing the previous order was erroneous, the Commissioner issued an order cancelling the registrations due to I.O.B. Realty's failure to file declarations of continuing use pursuant to 15 U.S.C. § 1058.

c) The Current Action

On February 17, 2006, appellants brought suit against the Staten Island appellees for federal and common law trademark infringement, injury to business reputation, and common law unfair competition.  The Staten Island location closed in September 2006.  During the course of settlement negotiations, appellants discovered that the Syosset location was preparing to open.  On October 30, 2006, appellants brought suit against the Syosset appellees for federal and common law trademark

10

infringement, federal and common law unfair competition, false designation of origin, and injury to business reputation. The two actions were then consolidated, and I.O.B. Realty and Patsy's Inc. intervened, alleging that they had prior use rights to PATSY'S for restaurant services. On November 26, 2006, the Syosset appellees, I.O.B. Realty, and Patsy's Inc. filed a counterclaim seeking a declaration either that appellees did not infringe appellants' marks or that those marks were invalid. After appellants sought a temporary restraining order, Judge Irizarry issued an order allowing the Syosset appellees to open the Syosset location as long as the words "Trattoria Impazzire" were not used with any materials associated with the restaurant.[2]

In March 2007, appellees filed a motion for summary judgment before the district judge seeking restoration of the ´574 Registration, cancellation of appellants' ´836 Registration and ´866 Registration, and the dismissal of appellants' claims. The district judge granted restoration of the ´574 Registration, but denied summary judgment on appellants' claims and the request for the cancellations. See generally Patsy's Italian Rest., Inc. v. Banas ("Patsy's Italian Rest. I"), 508 F. Supp. 2d 194 (E.D.N.Y. 2007). The district court also rejected appellants' argument

_____

[2] The district court did this because "trattoria" means "restaurant" in Italian, and allowing appellees to use the words "Trattoria Impazzire" on the facade of the Syosset location would add to the consumer confusion caused by the use of appellants' mark and name in connection with restaurant services.

11

that the injunction from the sauce litigation prohibited appellees from seeking such relief on the ground that the injunction applied only to registrations owned by Patsy's Brand. See id. at 214, 216. Patsy's Italian Restaurant, Inc. owned the registrations at issue. Id. at 214.

The parties proceeded to a jury trial before the magistrate judge. The jury found that: (i) I.O.B. Realty was the senior user of the marks PATSY'S and PATSY'S PIZZERIA, and continuously used the marks for pizzeria services but not restaurant services; (ii) there was a likelihood of confusion between appellees' marks and appellants' ´836 and ´866 Registrations; (iii) the Staten Island and Syosset appellees had exceeded the scope of their license with I.O.B. Realty; (iv) I.O.B. Realty had abandoned its marks through naked licensing -- i.e., a lack of adequate quality control over goods and services sold under the mark by the licensees; (v) the Staten Island appellees engaged in unfair competition and infringed appellants' federal and common law marks, but the infringement was not willful; (vi) the Syosset appellees engaged in unfair competition and willfully infringed appellants' federal and common law marks; (vii) both the Staten Island appellees and the Syosset appellees were likely to injure appellants' business reputation; (viii) appellees fraudulently obtained the ´574 Registration; and (ix) appellants did not fraudulently obtain either the ´836 Registration or the ´866 Registration.

12

After trial, appellants sought an injunction preventing the Syosset appellees from using the mark PATSY'S. Although this initial request was denied, on April 17, 2008, the district court ordered the Syosset location to put up a 24″ x 24″ sign in its front door that contained, in red capital letters, the statement: "WE ARE NOT AFFILIATED WITH PATSY'S ITALIAN RESTAURANT LOCATED AT 236 WEST 56TH STREET, NEW YORK, NY."

On September 9, 2008, the district court issued a decision dealing with the post-trial issues. See generally Patsy's Italian Rest., Inc. v. Banas ("Patsy's Italian Rest. IV"), 575 F. Supp. 2d 427 (E.D.N.Y. 2008). It denied appellees' motions for judgment as a matter of law because appellees failed to make such requests during trial. Id. at 445. The district court also denied appellees' various motions for a new trial. Id. at 446-54. Nevertheless, while the district court denied appellees' motion for a new trial with regard to the abandonment of their marks, the district court granted their motion to interpret the abandonment verdict narrowly. See id. at 450, 453. Concluding that the jury's verdict of abandonment was based on naked licensing but that the jury had not addressed the geographic scope of the naked licensing, id. at 450, 452, the district court determined that appellees had abandoned their marks only in Staten Island and Syosset. Id. at 452-53.

With regard to the parties' service mark registrations, the district court superseded the prior order reinstating appellees'

´574 Registration, thus refusing reinstatement of the registration, reasoning that the jury's verdicts precluded such relief. Id. at 463, 468-69, 469 n.28. However, the district court also determined that appellants' ´836 and ´866 Registrations should be cancelled due to appellees' limited remaining rights in their marks. Id. at 463, 465.

Addressing injunctive relief, the district court permanently enjoined the Syosset appellees from using the words "Trattoria Impazzire" in connection with their establishment. Id. at 469. Additionally, the district court required the Syosset appellees to maintain the previously imposed disclaimer sign for not less than three years from the entry of judgment. Id. The district court denied appellants' requests for further injunctive relief, as well as appellees' request for injunctive relief. Id. at 469-70. However, the district court went on to enter an injunction prohibiting both Patsy's Italian Restaurant and Patsy's Pizzeria from using the term PATSY'S alone in connection with their establishments. Id. at 470-71.

Finally, the district court denied appellants' request for attorneys' fees. Id. at 471.

DISCUSSION

a) Patsy's Italian Restaurant's Appeal:  Merits

1) Cancellation of Appellants' Registrations

Patsy's Italian Restaurant advances several arguments that the district court erred in cancelling the ´836 and ´866

14

Registrations.  We address them seriatim.

A) Cancellation Not Barred by the Prior Injunction

Appellants argue that the injunction in the sauce litigation prohibited appellees from seeking cancellation.

The injunction issued in the sauce litigation provided, in relevant part:

> That Defendants [I.O.B. Realty, Patsy's Inc.,
> Brija, Brecevich, and Nick Tsoulos], their
> successors, assigns, officers, directors,
> servants, employees, distributors, customers,
> representatives, agents and attorneys, and
> all persons in active concert and
> participation with them, or any of them, be
> and they are hereby permanently restrained
> and enjoined:
> . . .
> e.   from opposing any application for
> registration or petitioning to cancel any
> registration of Plaintiff [Patsy's Brand] for
> any trademark incorporating PATSY'S for
> sauces or other packaged food products or
> restaurant services . . . .

The district court held that the sauce litigation injunction applied only to registrations owned by Patsy's Brand and not to those owned by Patsy's Italian Restaurant, Inc.

We review a district court's interpretation of another court's order de novo.  See United States v. Spallone, 399 F.3d 415, 423 (2d Cir. 2005).  In doing so, we apply traditional principles of contract law and look to the intent of the issuing court.  See Mastrovincenzo v. City of New York, 435 F.3d 78, 103 (2d Cir. 2006); Spallone, 399 F.3d at 424.  Under traditional principles of contract law, "'[a] contract should be construed so

15

as to give full meaning and effect to all of its provisions.'" PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996) (quoting Am. Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (1st Dep't 1990)) (alteration in original).

Appellants essentially argue that we should read "Plaintiff" to include not just Patsy's Brand but also its associate, Patsy's Italian Restaurant, Inc. However, that would impermissibly stretch the injunction's language. Whereas "Defendants," as used in the order, specifically includes "their successors, assigns, officers, directors, servants, employees, distributors, customers, representatives, agents and attorneys, and all persons in active concert and participation with them, or any of them," the word "Plaintiff" lacks any such expansion. Injunctions are serious orders, enforceable in contempt proceedings, and such an order must give notice of the specific conduct ordered or prohibited. See Fed. R. Civ. P. 65(d) (requiring that "[e]very order granting an injunction . . . must . . . state its terms specifically . . . and . . . describe in reasonable detail . . . the act or acts restrained or required.") We therefore read "Plaintiff" to refer only to the party bringing the action.

This interpretation is fully consistent with the context in which the injunction was issued. Patsy's Italian Restaurant and Patsy's Pizzeria had co-existed peacefully for quite some time. See Patsy's Brand III, 317 F.3d at 212-13, 216. This co-existence ended only when both parties sought to enter the

16

packaged foods market.  See id. at 212-15.  In the sauce litigation, appellees had sought to cancel only Patsy's Brand's registrations and committed misconduct only with regard to the date of first use of their sauces.  See id. at 214-15.  Thus, the injunction does not bar appellees' counterclaim.[3]

B) Patsy's Pizzeria Only Partially Abandoned Its Marks

The district court's decision to cancel appellants' ´836 and ´866 Registrations pursuant to section 37 of the Lanham Act,

---

[3] Appellants also argue that the district court erred in even considering the cancellation counterclaim because the Syosset appellees sought cancellation only due to prior use, not likelihood of confusion.  However, the counterclaim states that "[Patsy's Italian Restaurant] has no intellectual property rights to the word PATSY'S when used with the word PIZZERIA.  Therefore, there is no infringement of the Patsy's Restaurant Marks or, if the marks of these registrations are infringed by the Defendants' use of the mark PATSY'S PIZZERIA with pizzeria services, the registrations are invalid."  This language can reasonably be read to include a counterclaim for cancellation due to a likelihood of confusion.

Moreover, appellants filed the motion to dismiss the counterclaim on this ground only months after the district court denied appellees' motion for summary judgment seeking cancellation of appellants' trademark registrations due to prior use.  As the district court then noted, the counterclaim seeking cancellation due to prior use necessarily required the additional showing of a likelihood of confusion. See Patsy's Italian Rest. I, 508 F. Supp. 2d at 215 (citing Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 743 (2d Cir. 1994)).  Nevertheless, appellants did not argue at  the summary judgment stage that the Syosset appellees' counterclaim seeking cancellation of their marks was not included within the pleadings.  Nor do appellants point to any other instance throughout the litigation where they raised this issue in a motion, either to dismiss or otherwise, so that the district court could properly address it.  Having actually litigated the issue during the trial, without raising any objections, "appellants impliedly consented to trial on this issue, within the meaning of Fed. R. Civ. P. 15(b)." Snell v. Suffolk County, 782 F.2d 1094, 1102 (2d Cir. 1986).

17

codified as amended at 15 U.S.C. § 1119, depended on its conclusion that I.O.B. Realty had retained some rights even after the jury's abandonment finding. Patsy's Italian Rest. IV, 575 F. Supp. 2d at 465-68. The district court concluded that, because the jury found that I.O.B. Realty continuously used the marks, the finding of abandonment had to have been based on a finding of naked licensing. Id. at 452. Appellants do not challenge this reasoning, but argue, rather, that the jury's verdict was one of total abandonment.

A district court's determination to grant relief pursuant to 15 U.S.C. § 1119 is reviewed for an abuse of discretion. See Empresa Cubana del Tabaco v. Culbro Corp., 541 F.3d 476, 478 (2d Cir. 2008) ("[S]ection 1119's use of the permissive 'may' in authorizing courts to grant relief, [is] distinct from its use of the mandatory 'shall' in requiring any orders or decrees that are entered to be sent to and followed by the PTO."). Appellants argue that our review should be de novo because the district court based its decision "on [its] disagreement with the jury's fact findings and [its] misreading of the Lanham Act." Appellant's Br. at 47. However, while claims of factual error or mistakes of law may inform the determination of abuse of discretion, they do not alter the standard of review.

Appellants first argue that any finding of naked licensing necessarily acted as a total abandonment of all rights. We disagree. Although some forms of trademark abandonment may

18

result in a loss of all rights in the mark, see e.g., Feathercombs, Inc. v. Solo Prods. Co., 306 F.2d 251, 256 (2d Cir. 1962), abandonment of a mark through naked licensing has different effects on the validity of the mark in different markets. See Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 369 (2d Cir. 1959) (a finding of naked licensing in the retail market would not result in the loss of trademark rights in the wholesale market). For example, if a restaurant operates in both New York and California, but engages in naked licensing only in California, the restaurant's registered mark may lose its significance in California while retaining its significance in New York. Thus, naked licensing will lead to an abandonment of a mark only where the mark loses its significance. 15 U.S.C. § 1127.

As a result, we agree with the district court that a mark owner can abandon a mark through naked licensing in a particular geographic area without abandoning its rights throughout the entire United States. See also Tumblebus Inc. v. Cranmer, 399 F.3d 754, 765-66 (6th Cir. 2005) (recognizing that "there is considerable support for the concept that rights in a mark may be abandoned in certain geographic areas but not others"); Sheila's Shine Prods., Inc. v. Sheila Shine, Inc., 486 F.2d 114, 125 (5th Cir. 1973) (recognizing abandonment in some areas but not others); E.F. Prichard Co. v. Consumers Brewing Co., 136 F.2d 512, 521-22 (6th Cir. 1943); Snuffer & Watkins Mgmt. Inc. v.

19

Snuffy's Inc., 17 U.S.P.Q.2d 1815, 1816 (T.T.A.B. 1990) ("Accordingly, an allegation of abandonment in a specific geographic location is an insufficient pleading in a cancellation proceeding."); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed. 2008).[4]

The district court limited the scope of I.O.B. Realty's abandonment pursuant to Fed. R. Civ. P. 49(a)(3) ("A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. . . .").

In its answer to a special interrogatory, the jury concluded that Patsy's Pizzeria abandoned its marks. Patsy's Italian Restaurant argues that the verdict encompassed the Staten Island location, the Syosset location, and all Manhattan locations other than the East Harlem location. We disagree.[5]

---

[4] Apart from arguing total abandonment, Patsy's Italian Restaurant does not contest the geographical divisions the district court adopted in determining the scope of I.O.B. Realty's abandonment through naked licensing.

[5] Appellants also argue that the district court's decision to cancel appellees' '574 mark conflicts with the conclusion that appellees retained some rights in the mark because the cancellation was based, in part, on the jury finding of abandonment. However, the court did not rely solely on the finding of abandonment in cancelling the registration, but on a combination of fraud and partial abandonment of the mark. See Patsy's Italian Restaurant IV, 575 F. Supp. 2d at 469 ("I.O.B. Realty's fraudulent statements to the PTO and TTAB, and its

"[S]pecial interrogatories must be read in conjunction with the district court's charge." Romano v. Howarth, 998 F.2d 101, 104 (2d Cir. 1993) (internal quotation marks omitted).  The jury was asked to determine whether there was abandonment but not the geographic scope of any such abandonment.  Appellants requested no instruction on whether the naked licensing was limited to certain entities or certain geographical areas.  While the abandonment instructions never identified as their subject the specific licenses granted to the Staten Island location or the Syosset location, those are the entities that were the subject of the naked licensing claim at trial.  Therefore, the district court properly resolved the scope of abandonment issue pursuant to Fed. R. Civ. P. 49(a)(3).

Finally, Patsy's Italian Restaurant argues that Patsy's Pizzeria's limited rights in the Manhattan area do not warrant cancellation of their registration.  They contend that they are entitled to expand nationwide because Patsy's Pizzeria's rights are limited.  Moreover, they suggest that the expansion by Patsy's Pizzeria outside Manhattan that caused the likelihood of confusion occurred after their applications for registration were filed.  They argue, therefore, that the cancellation was in

limited abandonment through naked licensing . . . warrants cancelling the '574 Registration." (emphasis added)).  Therefore, the decision to cancel appellees' '574 Registration and the conclusion that they still retained some limited rights in the mark are not in conflict.

21

violation of their rights and should not affect their registrations. We disagree.

Local rights owned by another have been consistently viewed as sufficient to prevent a party from obtaining registration of a federal mark. See Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1571 (Fed. Cir. 1983) (refusing registration due to likelihood of confusion, even where there was no evidence of actual confusion "mainly [due] to the geographical separation of the two parties' operations"); Peopleware Sys., Inc. v. Peopleware, Inc., 226 U.S.P.Q. 320, 321 (T.T.A.B. 1985) (noting that "geographical separation of the parties' principal places of business cannot be considered to be of significance in determining registrability of applicant's mark since it seeks a geographically unrestricted registration"); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20:15 (4th ed. 2008) ("Geographical separation of the parties is not relevant in an opposition."). Indeed, this is consistent with the principle in trademark law "that the second comer has a duty to so name and dress his product [or service] as to avoid all likelihood of consumers confusing it with the product [or service] of the first comer." Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 758 (2d Cir. 1960).

Because registration of a federal mark confers upon the owner of the mark a presumption that the owner has the exclusive right to use the mark nationwide, 15 U.S.C. § 1115(a), it is

22

proper to consider the rights of users nationwide when determining whether a party is entitled to registration of their mark.  See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20:15 (4th ed. 2008).  In fact, Section 1052(d) itself provides that a mark cannot be registered if it "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States and not abandoned, as to be likely . . . to cause confusion . . . ."  15 U.S.C. § 1052(d).  Thus, the very language of the statute contemplates that a mark used anywhere in the United States can be sufficient to block federal registration.  See id.

In these circumstances, the principles applicable to the initial registrability of a mark should also be applied to a claim seeking the cancellation of a registration that has not yet become incontestable pursuant to Section 1065.  Id. § 1065. Young v. AGB Corp., 152 F.3d 1377, 1380 (Fed. Cir. 1998) ("The linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that we construe the requirements of these provisions consistently. There is no basis for interpreting them differently.") (internal citations omitted); 3 McCarthy on Trademarks and Unfair Competition § 20:52 ("[F]or Principal Register marks not yet five years on the register, cancellation may be based on any ground in the Lanham Act that would have barred registration in the first

23

instance."). Cf. 15 U.S.C. § 1064 (limiting the grounds on which cancellation can be sought after the mark has been registered for five years).

In conclusion, the district court did not abuse its discretion by cancelling appellants' registrations. Nevertheless, the lack of a federal registration does not prevent Patsy's Italian Restaurant or Patsy's Pizzeria from expanding as they so desire, so long as they respect each other's existing rights. Rather, the cancellation simply precludes appellants from utilizing the statutory presumptions and other benefits conferred to a mark owner through federal registration. See 15 U.S.C. § 1115 (setting forth the evidentiary presumptions a mark owner is entitled to and limiting the defenses against an incontestable registration); cf. id. § 1125(a) (providing a federal cause of action for infringement of an unregistered mark).

C) Jury Instructions Pursuant to Grants of Judgment as a Matter of Law

Appellants argue that the district court erroneously instructed the jury that there was privity as a matter of law between the purported predecessors of I.O.B. Realty and I.O.B. Realty as well as between I.O.B. Realty and the Syosset and Staten Island appellees. The instruction being a question of law, we review it de novo. See Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 96 (2d Cir. 1999). However, appellants

24

waived any claim of error regarding the privity issue by failing to raise them with the district court. See Gwozdzinsky ex rel. Revco D.S., Inc. v. Magten Asset Mgmt. Corp., 106 F.3d 469, 472 (2d Cir. 1997). Appellants made no objection whatsoever to the finding of privity between I.O.B. Realty's predecessors and I.O.B. Realty. As for the finding of privity between I.O.B. Realty and the other defendants, counsel for appellants stated only that: "we object to reference to the license agreement as being a valid agreement . . . . Perhaps you could take out the word 'valid'; then there would be more consistency there." Later, appellants clarified their objection stating "[w]e don't believe that a naked license is a valid license." Notably, the issue of naked licensing went to the jury.

Appellants similarly challenge the district court's instruction to the jury that there was, as a matter of law, use of the marks in interstate commerce. They argue in that regard that appellees were required to demonstrate use in interstate commerce as part of their prior use defense because a mark must be used in interstate commerce in order to be eligible for federal registration.

No provision of the Lanham Act supports that contention. The Lanham Act merely provides that a mark is not registrable if there is a likelihood of confusion between that mark and "a mark or trade name previously used in the United States by another and not abandoned . . . ." 15 U.S.C. § 1052(d). A party need not

25

meet the statutory requirement of use in interstate commerce to oppose, or seek cancellation of, a registration based on confusion. See id.; First Niagara Ins. Brokers, Inc. v. First Niagara Fin. Grp., Inc., 476 F.3d 867, 870-71 (Fed. Cir. 2007). Likewise, prior use as a defense against a trademark infringement suit does not require use in commerce. See 15 U.S.C. § 1115(b)(6). Indeed, as discussed above, even appellees' local rights would be sufficient to warrant cancellation of appellants' marks due to a likelihood of confusion. See 3 McCarthy on Trademarks and Unfair Competition § 20:15.

Nevertheless, even if use in commerce had to be shown, the evidence showed such use as a matter of law. Due to the different nature of the marks, "use in commerce" is defined differently for trademarks and service marks. See 15 U.S.C. § 1127. A service mark is used in commerce when, among other things, "it is used or displayed in the sale or advertising of services and the services are rendered in commerce," where "commerce" includes "all commerce which may lawfully be regulated by Congress." Id. We have previously recognized that this broad definition reflects "Congress's intent to legislate to the limits of its authority under the Commerce Clause." Buti v. Perosa, S.R.L., 139 F.3d 98, 102 (2d Cir. 1998) (internal quotation marks omitted).

Appellants rely on the failure to show use of the mark in advertising materials, but there is no requirement that a mark be

26

so used. Rather, it is enough to show use or a display of the mark in the sale of services rendered in commerce, 15 U.S.C. § 1127, as was the case here. Appellees' mark was prominently displayed on numerous versions of the Patsy's Pizzeria menu entered into evidence as well as displayed on the exterior of the East Harlem building.

Additionally, these services were rendered in commerce. The provision of services to interstate customers is sufficient to show that the services were rendered in commerce. See Larry Harmon Pictures Corp. v. Williams Rest. Corp., 929 F.2d 662, 666 (Fed. Cir. 1991); Application of Gastown, Inc., 326 F.2d 780, 782-83 (C.C.P.A. 1964). A map in evidence demonstrates that Patsy's Pizzeria is easily accessible from several nearby interstate highways. Numerous articles about Patsy's Pizzeria were also in evidence, including one from the New York Times, which undoubtedly extends to an interstate audience. Furthermore, reviews for Patsy's Pizzeria from guides such as the 2003 Not For Tourists Guide to New York City and the 2004 Zagat Survey for New York City Restaurants were also entered into evidence. Finally, there was testimony that cab drivers knew where Patsy's Pizzeria was, that people "[came] from all over" to go there, and even that pizza was shipped to the west coast. Thus, the district court properly instructed the jury to find that appellees used their mark in interstate commerce as a matter of law.

27

2) Denial of Attorneys' Fees

Patsy's Italian Restaurant appeals the district court's denial of its request for attorneys' fees. Patsy's Italian Rest. IV, 575 F. Supp. 2d at 471. Section 35(a) of the Lanham Act, codified as amended at 15 U.S.C. § 1117(a), provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Thus, in order to be entitled to attorneys' fees, the party must be the "prevailing party" and the case must be "exceptional," or, in other words, involve fraud, bad faith, or willful infringement. Patsy's Brand III, 317 F.3d at 221. Even then the statute provides only that the district court "may" award attorneys' fees. See 15 U.S.C. § 1117(a). As a result, we review the district court's decision for an abuse of discretion. See Quaker State Oil Refining Corp. v. Kooltone, Inc., 649 F.2d 94, 95-96 (2d Cir. 1981) (per curiam).

Appellants argue that the district court erred because it held that they were not a prevailing party. We disagree with that characterization of the district court's holding. To be sure, some of the district court's statements, if read in isolation, could be read to suggest that appellants were not a prevailing party. However, the district court explicitly exercised its discretion not to award. See Patsy's Italian Rest. IV, 575 F. Supp. 2d at 471 ("[T]he Court does not find this case is so 'exceptional' as to justify an award of attorneys' fees . . . . The Court thus exercises its discretion and denies

28

Plaintiffs' motion for attorneys' fees."). Given the facts of this case and the mixed outcome of the litigation, the district court clearly did not abuse its discretion in so ruling.[6]

b) Patsy's Pizzeria's Cross-Appeal:  Merits

1) Limitation of Appellees' Rights to Pizzeria Services

Patsy's Pizzeria argues that the district court erred by including the distinction between general restaurant services and pizzeria services in the jury instructions and special verdict sheet when no definition of pizzeria services was

---

[6] Appellants also claim that the district court erred when it refused to admit as evidence certified government records of a fire into evidence. These records, they claim, show that Patsy's Pizzeria was operating solely as a pizzeria and not a restaurant at the time of the fire. These records were not offered until after the record was closed. "A motion to reopen the record for the presentation of new evidence is addressed to the sound discretion of the trial court" and is reviewed for an abuse of discretion. DiBella v. Hopkins, 403 F.3d 102, 119 (2d Cir. 2005) (internal quotation marks and alteration omitted). Appellants offered no reason for not obtaining the certified records earlier. Thus, the district court did not abuse its discretion by declining to admit the records.

Additionally, appellants argue that appellees' evidence of prior use was misleading based on the discovery of photographs said to contradict the testimony of appellees' witnesses. They contend that the district court erred by refusing to take into account the misleading nature of the evidence when cancelling appellants' marks. Instead, the district court relied on the jury's verdict of prior use.

A district court has considerable discretion in determining whether to grant equitable relief. See Bano v. Union Carbide Corp., 361 F.3d 696, 716 (2d Cir. 2004). The district court did not abuse its discretion by relying on a valid jury verdict when fashioning equitable relief. Nor did the district court abuse its discretion by failing to consider appellants' photographs, which were not admitted into evidence.

29

offered.[7] It asserts that the lack of a definition is particularly important because it misled the jury into believing this distinction is recognized at law, and the jury's special verdicts on many of the issues turned on the definition of pizzeria services. We disagree. The court was not obliged to define pizzeria services for the jury because the jury was capable of determining the meaning of that term, which is neither technical nor ambiguous. United States v. Morris, 928 F.2d 504, 511 (2d Cir. 1991) ("Since the word is of common usage, without any technical or ambiguous meaning, the Court was not obliged to instruct the jury on its meaning.") (citing United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir. 1988).

Patsy's Pizzeria also suggests that the distinction between pizzeria services and restaurant services was inappropriate because the classification system used by the PTO does not distinguish between the two services, providing only the category of "restaurant services." This argument misunderstands the purpose of the PTO's classification system. The PTO's classifications exist solely for administrative purposes, and does not affect the substantive rights of a mark's owner in any way. See 15 U.S.C. § 1112 ("The Director may establish a classification of goods and services, for

---

[7] Patsy's Italian Restaurant claims that Patsy's Pizzeria waived any such objections to the jury instructions. The record is unclear in this regard, and we therefore address the merits.

30

convenience of Patent and Trademark Office administration, but not to limit or extend the applicant's or registrant's rights."). Rather, Patsy's Pizzeria's substantive rights are defined by the scope of the services used in connection with the mark. See In re Trade-Mark Cases, 100 U.S. 82, 94 (1879); ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 146 (2d Cir. 2007).

Patsy's Pizzeria further argues that there was no evidence to support the jury's finding that they did not provide restaurant services and use for pizzeria services. We disagree. Patsy's Pizzeria's argument appears to rely heavily on their claim that pizzeria services are limited to businesses serving pizza only by the slice. However, as noted, Patsy's Pizzeria did not request that the district court provide this definition in the jury instructions, and there is no manifest injustice in the district court's failure to do so. Without a definition, it was up to the jury to determine the appropriate distinction, and there was sufficient evidence to support its determination.

For example, the jury had before it a variety of menus, including the menus for various Patsy's Pizzeria locations, Patsy's Italian Restaurant's menu, and menus from Pizza Hut and Dominos Pizza. They were able to compare those to determine whether there was a distinction between the services provided and, if so, what that distinction was. In addition, during the trial, the deposition testimony of a Patsy's Pizzeria

31

franchisee was read into the record, in which the franchisee stated that in "[p]izzerias you just serve pizza," and a witness for Patsy's Italian Restaurant also gave a similar definition. Thus, there was sufficient evidence to permit the jury to draw the distinction in question.

There was also sufficient evidence to support the jury's verdict that Patsy's Pizzeria's rights were limited to pizzeria services. Patsy's Pizzeria argues that there was no evidence that they served solely pizza, and, indeed, that they demonstrated that they continuously sold a variety of foods. Having conceded that they failed to file a motion for judgment as a matter of law, appellants merely seek a new trial on this ground. As we have previously explained, "'[w]here a jury's verdict is wholly without legal support, we will order a new trial in order to prevent a manifest injustice[,]' despite an appellant's failure to move for a directed verdict." Russo v. New York, 672 F.2d 1014, 1022 (2d Cir. 1982) (quoting Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54-55 (2d Cir. 1978)).

There was no manifest injustice calling for a new trial. With regard to the element of continuous provision of restaurant services, the 1991 contract of sale transferring ownership to I.O.B. Realty states that the East Harlem location's restaurant section was closed, and I.O.B. Realty agreed only to provide pizzeria services during a specified period of time. Evidence introduced by Patsy's Pizzeria itself

32

suggests a focus on only pizza. For example, franchisees were trained regarding how to make pizza the Patsy's way, and one franchisee testified to the purchase of a $75,000 pizza oven because their "focus was on the pizza." Additionally, the jury was shown a documentary that discussed how the original Patsy's Pizzeria was the first pizzeria to sell pizza by the slice. Thus, Patsy's Pizzeria is not entitled to a new trial on the ground of manifest injustice.

2) Fraud on the PTO

Appellees challenge the jury's verdict that they made fraudulent statements to the PTO. Generally, a party alleging that a registration was fraudulently obtained must prove the following elements by clear and convincing evidence:

1. A false representation regarding a material fact.

2. The person making the representation knew or should have known that the representation was false ("scienter").

3. An intention to induce the listener to act or refrain from acting in reliance on the misrepresentation.

4. Reasonable reliance on the misrepresentation.

5. Damage proximately resulting from such reliance.

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:61 (4th ed. 2008) (footnote omitted); see also In re Bose, 580 F.3d 1240, 1243 (Fed. Cir. 2009); Quicksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 755 (9th Cir. 2006); United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000).

Appellees argue that the jury's verdict that they made fraudulent statements to the PTO either relied on facts that, even if proven, were insufficient as a matter of law, or was supported by legally insufficient evidence.[8]  Again, because appellees failed to move for a directed verdict, they are limited to seeking a new trial, which we will grant only if necessary to prevent manifest injustice when "a jury's verdict is wholly without legal support."  Russo, 672 F.2d at 1022.

Appellants claimed that I.O.B. Realty committed fraud in its application for the ´574 Registration for PATSY'S PIZZERIA for restaurant services by:  (i) the statement that "the mark was used continuously for restaurant services since 1933"; (ii) the statement that they "believed I.O.B. Realty had the

---

[8] Appellees also argue that the district court should have vacated the jury's verdicts that appellants did not commit fraud on the PTO.  We see no merit in this argument for the reasons stated by the district court.  Nevertheless, we also note that a verdict finding fraud would result only in the cancellation of appellants' registrations.  See Orient Express Trading Co. v. Federated Dep't Stores, Inc., 842 F.2d 650, 654 (2d Cir. 1988).  Thus, because we affirm the district court's cancellation of appellants' registrations on other grounds, see supra, we need not address this argument.

exclusive right to use the name PATSY'S PIZZERIA or any mark similar thereto for restaurant services and that no one else had the right to use that name"; and (iii) their failure to tell the PTO about Patsy's Brand's Registration No. 1,874,789 for PATSY'S for pasta sauces, even though they were petitioning to cancel that mark on the ground that it was confusingly similar to the mark PATSY'S PIZZERIA for restaurant services.

Appellees argue that there was insufficient evidence that I.O.B. Realty knew that statement (i) was a misrepresentation because the jury found I.O.B. Realty continuously used the marks PATSY'S and PATSY'S PIZZERIA, and thus was the senior user. Appellees additionally argue that statements (ii) and (iii) were insufficient as a matter of law because they had no obligation to inform the PTO of junior users. They add that, even if they were legally sufficient, there was insufficient evidence to support the jury's verdict under either (ii) or (iii) because the evidence showed that I.O.B. Realty believed it was the senior user and thus was under no legal obligation to disclose the information.

Appellees have failed to meet their burden of showing manifest injustice because the jury's verdict was not wholly without support. There was evidence of fraud in I.O.B. Realty's statement that it had continuously used the mark for restaurant services since 1933. It follows that I.O.B. Realty specified the services in connection with which the mark was

35

used more broadly than it was actually used, a fact they had to have known.

"[S]ince a registration is prima facie evidence that the registrant is using the registered mark on the goods or services specified in the registration," 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:48 (4th ed. 2008), I.O.B. Realty's misrepresentation resulted in a registered mark that was broader in scope than it should have been. As a result, appellees have failed to show that the jury's verdict lacked any legal basis, and they are thus not entitled to a new trial.

3) Refusal to Reinstate Registration No. 2,213,574

Appellees argue that the district court's refusal to reinstate the ´574 Registration for PATSY'S PIZZERIA for restaurant services was erroneous because it was inconsistent with the district court's conclusion that they retained some rights in the mark. As previously discussed, the district court's refusal to reinstate a registration pursuant to 15 U.S.C. § 1119 is reviewed for an abuse of discretion. See Empresa, 541 F.3d at 478. Registration provides the mark owner with certain presumptions and additional procedural rights, see, e.g., 15 U.S.C. § 1115, but owners of unregistered marks also retain some, albeit more limited, rights under the Lanham Act. See, e.g., Orient Express Trading Co., 842 F.2d at 654. Specifically, when a party's registered mark is cancelled due

36

to fraud before the PTO, the party can still bring an action as an owner of an unregistered mark for relief pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). See Orient Express, 842 F.2d at 653-54. Thus, the district court's determination that I.O.B. Realty's mark should not be restored but that appellants' marks should be cancelled due to I.O.B. Realty's limited remaining rights is not inconsistent in this respect. The jury's fraud verdict fully justified the district court's decision not to restore I.O.B. Realty's registration. We, therefore, need not address appellees' other arguments in that regard.

c) Injunctive Relief

With regard to the injunction issued by the district court, appellants claim that it erred when it did not enjoin appellees from using the PATSY'S mark in connection with any locations other than those currently located in Manhattan. Appellants and Patsy's Pizzeria both challenge the injunction prohibiting them from using the term PATSY'S alone.

A permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and "show[s] the absence of an adequate remedy at law and irreparable harm if the relief is not granted." Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (internal quotation marks omitted). However, "[i]njunctive relief should be narrowly tailored to fit specific legal violations." Patsy's Brand III, 317 F.3d at 220

37

(internal quotation marks omitted); see also Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 750 (2d Cir. 1994) ("The Lanham Act does not require a total ban on the use of a mark by an infringing junior user. To the contrary, the Lanham Act demands that injunctive relief be no broader than necessary to cure the effects of the harm caused.") (internal quotation marks omitted). Thus, "[i]n fashioning the injunction, the Court should balanc[e] . . . the equities to reach an appropriate result protective of the interests of both parties." Sterling Drug, 14 F.3d at 747 (internal quotation marks omitted). We review a district court's determinations regarding the scope of injunctive relief for an abuse of discretion. See id. at 744; Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 61 (2d Cir. 1992). We review determinations regarding the authority to enter an injunction de novo. Starter Corp. v. Converse, Inc., 170 F.3d 286, 298 (2d Cir. 1999). In addition, Rule 65(d)(1)(A) of the Federal Rules of Civil Procedure requires that "[e]very order granting an injunction . . . must . . . state the reasons why it issued." Fed. R. Civ. P. 65(d)(1)(A). This requirement ensures that an appellate court is able to understand the reasons for the injunction. See Knox v. Salinas, 193 F.3d 123, 129 (2d Cir. 1999) (per curiam).

1) Refusal to Enjoin Appellees From Using PATSY'S Outside of Manhattan

Appellants argue that the district court should have

38

enjoined appellees from using the mark PATSY'S outside of the current Manhattan locations. In so arguing, they rely on the jury's findings that: (i) the Staten Island and Syosset appellees engaged in trademark infringement, unfair competition, and injury to business reputation; (ii) the Syosset appellees' trademark infringement was willful; and (iii) the Staten Island and Syosset appellees' use of the PATSY'S and/or PATSY'S PIZZERIA marks exceeded the scope of their license with I.O.B. Realty.

However, there was no abuse of discretion by the district court. Because the district court validly cancelled appellants' registrations, appellants are no longer entitled to the presumptive right to use the marks nationwide that a federal registration provides. See 15 U.S.C. § 1115(a). Nor did this litigation address the parties' rights beyond Manhattan, Staten Island, and Syosset. Indeed, none of the jury findings that appellants rely upon involves misconduct by the intervening appellees, in contrast to the Staten Island and Syosset appellees.

We, therefore, turn to the district court's failure to enjoin the Staten Island appellees and the Syosset appellees from using the mark PATSY'S. After this action was brought, the Staten Island location closed, and appellants do not claim that it will be reopened. As a result, it was not an abuse of discretion to refuse to enjoin the Staten Island appellees.

39

As for the Syosset location, the district court did grant some injunctive relief to appellants, although not as broad as they would have liked. Rather than enjoining the Syosset defendants from using the mark PATSY'S in any manner, the district court entered an injunction that prohibits the Syosset defendants from using the term "Trattoria Impazzire" and also requires them to place a sign in their front window disclaiming any association with Patsy's Italian Restaurant for at least three years from the date of judgment. Patsy's Italian Rest. IV, 575 F. Supp. 2d at 469. See supra note 2. Appellants argue that these injunctions are insufficient because "the term PATSY'S is more than three times the size of the word PIZZERIA" in the signs of both the Syosset and Staten Island locations. Appellants' Br. at 40. Appellants also argue that the disclaimer sign is insufficient because it is not visible to the public, particularly to those driving by the Syosset location and those visiting the Syosset location's website. Finally, appellants argue that the removal of the "Trattoria Impazzire" sign is insufficient because it does not alter the nature of the Syosset location's menu.

"A district court has a 'wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct.'" Soltex Polymer Corp. v. Fortex Indus., Inc., 832 F.2d 1325, 1329 (2d Cir. 1987) (quoting Spring Mills, Inc. v. Ultracashmere House, Ltd., 724 F.2d 352, 355 (2d Cir.

40

1983)).  Given the district court's great flexibility in fashioning relief, see Soltex, 832 F.2d at 1329, we have frequently recognized that the use of a disclaimer sign can, in the right circumstances, be appropriate relief.  See Jim Beam Brands Co. v. Beamish & Crawford Ltd., 937 F.2d 729, 737 (2d Cir. 1991); Soltex, 832 F.2d at 1329-30; Spring Mills, 724 F.2d at 355.  Whether such a disclaimer is appropriate depends on "the circumstances of the relevant business and its consumers." Home Box Office, Inc. v. Showtime/The Movie Channel Inc., 832 F.2d 1311, 1315 (2d Cir. 1987).  Here, the removal of the "Trattoria Impazzire" sign, combined with the disclaimer, is a permissible balancing of the equities.  The fact that the term PATSY'S may be larger than the term PIZZERIA in the sign does not alter this conclusion.  Nor are we persuaded by appellants' argument that the menu remains the same.  The district court did not abuse its discretion by declining to delve into the minute details of permissible menu items (unseen until passing the disclaimer sign) for the Syosset restaurant.

As for appellants' allegations regarding the disclaimer sign, many of these allegations suggest that the Syosset appellees are not complying with the injunction.  This is a matter properly brought up with the district court.  Spring Mills, 724 F.2d at 356.  Nor do the remaining allegations convince us that the injunction was not proper relief.

2)  Prohibiting Appellants and Patsy's Pizzeria From Using

41

Solely "PATSY'S"

The district court entered an injunction prohibiting appellants and Patsy's Pizzeria from using solely the term PATSY'S. No party requested such an injunction as relief. Generally, where neither party has requested the injunctive relief the district court intends to grant, the parties must receive an opportunity to be heard. See Starter, 170 F.3d at 299.

In the present case, the district court instructed the parties to address the propriety of such an injunction in their post-trial papers. Neither party requested this particular injunction only because it represented a compromise between their respective positions, an anathema to both. It was not the lack of notice, but rather the lack of interest in such relief, that left the injunction with the appearance of sua sponte relief. Also, the considerations pro and con are rehashes of years of arguments that need to come to an end. We are completely confident that a remand would be unilluminating, delay the termination of this litigation needlessly, and merely lead to more fruitless, overlitigated proceedings.

In all other respects, the injunction is entirely within the district court's discretion. Appellants argue that: (i) the district court failed to make the findings required by Fed. R. Civ. P. 65(d)(1)(A); (ii) the issuance of the injunction is not narrowly tailored because it went beyond the scope of the

42

party's claims, which did not involve the right to use PATSY'S in Manhattan; and (iii) the injunction is inconsistent with the district court's finding that appellants have the right to use PATSY'S for restaurant services. None of these arguments has any merit whatsoever.

With regard to (i), the district court's injunction was sufficiently tailored. While the prime focus of the litigation may not have been on the right to use PATSY'S in Manhattan, Patsy's Pizzeria's counter-claim seeking cancellation of appellants' registrations necessarily required the consideration of a likelihood of confusion between the marks in Manhattan. As a result, the injunction did not go beyond the scope of the issues tried in the case.

As for (ii), the district court's reasons for the injunction are adequate to provide meaningful appellate review. The jury found that there was a likelihood of confusion between Patsy's Pizzeria's marks and Patsy's Italian Restaurant's ´836 Registration for the stylized mark PATSY'S PR for restaurant services and the ´866 Registration for PATSY'S for restaurant services not including pizza. And, as noted by the district court, there was substantial evidence in the record indicating "an exceeding degree of consumer confusion." Patsy's Italian Rest. IV, 575 F. Supp. 2d at 470. In addition, the district court weighed the parties' rights with the harm to the public due to a likelihood of confusion, and determined that the

43

injunction met a sufficient balance.

With regard to (iii), while I.O.B. Realty can no longer protect its rights to the name Patsy's due to the long period of use by Patsy's Italian Restaurant, see Patsy's Brand III, 317 F.3d at 216-17; Patsy's Italian Rest. IV, 575 F. Supp. 2d at 470, that fact does not alter the likelihood of confusion by consumers. Having allowed the consumer confusion to develop, no party can now complain about the district court's attempt to minimize the confusion. This is particularly true given our earlier admonition to the parties that "both sides . . . would be well advised to minimize the risk of confusion by identifying their restaurants by the complete names: 'Patsy's Italian Restaurant' and 'Patsy's Pizzeria.'" Patsy's Brand III, 317 F.3d at 221.

Appellees argue that the injunction was an abuse of discretion because it included the original location in East Harlem as well as the licensees in Manhattan, which were not parties to the litigation. They argue that there was no finding of likelihood of confusion with regard to those locations, claiming it is unusual to enjoin a senior user without such a finding. We disagree.

Rule 65(d)(2) provides that an injunction binds both the parties and anyone who is "in active concert or participation with [the parties.]" Fed. R. Civ. P. 65(d)(2)(c). Both I.O.B. Realty and Patsy's Inc. were parties to the instant litigation.

44

Because the Manhattan locations are authorized to use I.O.B. Realty's marks through the franchise agreements with Patsy's Inc., they are "in active concert or participation" with I.O.B. Realty and Patsy's Inc. insofar as the injunction involves the use of the PATSY'S mark, see Fed. R. Civ. P. 65(d)(2)(C). Furthermore, as the owner of the mark, I.O.B. Realty was perfectly able to represent the other locations' interests in using the mark. As a result, it was not an abuse of discretion to enter an injunction binding the Manhattan Patsy's Pizzeria locations.

Nor did the district court abuse its discretion by enjoining the senior user. While doing so may be unusual, this is not the typical case. As noted above, Patsy's Pizzeria's counterclaim seeking cancellation of appellants' registrations necessarily required the consideration of a likelihood of confusion between the marks in Manhattan. As a result, there was substantial evidence in the record indicating "an exceeding degree of consumer confusion," Patsy's Italian Rest. IV, 575 F. Supp. 2d at 470, and the jury found that there was a likelihood of confusion between Patsy's Pizzeria's marks and Patsy's Italian Restaurant's ´836 and ´866 Registrations. Furthermore, as noted, I.O.B. Realty can no longer protect its rights against Patsy's Italian Restaurant, see Patsy's Brand III, 317 F.3d at 216-17; Patsy's Italian Rest. IV, 575 F. Supp. 2d at 470, and thus I.O.B. Realty's failure to enforce its rights

45

contributed to the consumer confusion.  Given these facts, we do not believe that the district court erred by "evaluat[ing] . . . the legitimate interests of the senior user, the junior user, and the consuming public," <u>Am. Footwear Corp. v. Gen. Footwear Co. Ltd.</u>, 609 F.2d 655, 664 (2d Cir. 1979) and concluding that, in order to strike the proper balance of these interests, the senior user must also be enjoined from using solely the name PATSY'S.

## CONCLUSION

For the foregoing reasons, we affirm.